369 So.2d 332 (1979)
FLORIDA COMMISSION ON ETHICS, Appellant,
v.
Kenneth A. PLANTE, Dempsey Barron, Philip D. Lewis, Jack D. Gordon, and Jon Thomas, Appellees.
No. 53899.
Supreme Court of Florida.
March 22, 1979.
*333 Jim Smith, Atty. Gen., and William C. Sherrill, Jr., Chief Trial Counsel, Tallahassee, for appellant.
Tobias Simon, Miami, Charles L. Carlton, Lakeland, and Richard C. McFarlain, Tallahassee, for appellees.
Bruce C. Starling, Gen. Counsel, Nancy G. Linnan, Asst. Gen. Counsel, Tallahassee, and Donald M. Middlebrooks, Miami, for Governor Reubin O'D. Askew and The Sunshine Amendment, Inc., amici curiae.
PER CURIAM.
We here review an order of the district court of appeal construing a provision of the Florida Constitution. Jurisdiction vests under article V, section 3(b)(1). At issue is the meaning of the words "public report" in article II, section 8(f). We hold that these words mean a report which includes a conclusion and that such an interpretation does not violate the concept of separation of powers between branches of government. The district court opinion is quashed.
Article II, section 8, known as the Sunshine Amendment, establishes financial reporting requirements for all elected constitutional *334 officers, public officers, public employees and candidates. Subsection (f) authorizes an independent commission to "conduct investigations and make public reports on all complaints concerning breach of public trust" by persons covered by the section, except those "within the jurisdiction of the judicial qualifications commission." Subsection (h)(3) names the Florida Commission on Ethics as that independent commission provided for in subsection (f). The commission is also charged with duties under Chapter 112, Part III, Florida Statutes.
A complaint was filed against five state senators alleging that they had breached the public trust by failing to comply with the public financial disclosure requirements of article II, section 8(a) and (h).[1] The facts are not in dispute: The senators did not file the required reporting forms. After a hearing on the complaint, the commission found "probable cause" to believe that the senators had breached the public trust, and this finding was transmitted to the President of the Senate.[2]
The senators appealed the commission's finding to the First District Court of Appeal, and in an order dated December 23, 1977, that court held that the commission was without authority to make a probable cause finding. The court struck the probable cause finding and made permanent an order previously entered against the commission staying any transfer of the findings to the senate. No rehearing was requested, and no appeal was taken from the ruling.
After a subsequent meeting, the commission issued a public report dated February 15, 1978, finding that the senators, by failing to file "full and public disclosure," had breached the public trust. The senators petitioned the First District Court of Appeal to strike the commission's latest report and to issue a contempt show cause order. The court struck the commission's finding of a breach of public trust, but did not make a contempt finding against the members of the commission because nothing before the court "... indicate[d] that either Commissioner did not act in good faith." The commission appealed to this court.
We are faced with three issues: (1) whether the Commission on Ethics is bound by the opinion and order of the district court dated December 23, 1977; (2) whether the Commission on Ethics, pursuant to article II, section 8(f), may issue a report finding that public officials and other persons covered by the Sunshine Amendment have breached the public trust; and (3) if such a report may be issued, whether the commission's action infringes on article III, section 4(d), Florida Constitution.

I
We must first determine what the First District Court of Appeal held in its opinion of December 23, 1977 (Plante v. The Florida Commission on Ethics, 354 So.2d 87 (Fla. 1st DCA 1977)). We conclude that the opinion holds that the Commission on Ethics may not transmit a finding of probable cause to the President of the Senate in an attempt to commence a disciplinary action against a senator. Several portions of the opinion demand this conclusion. (A) In the statement of facts, the court states:
... the Florida Commission on Ethics ... purported to find probable cause to establish breach of public trust ... and sought to refer such finding to the President of the Senate for official action. [Emphasis added.]
354 So.2d at 88.
Clearly, the district court considered the commission's referral of its report to the President of the Senate to be a demand for official action. (B) This is further shown by the court's description of the issue before it:

*335 Petitioners and respondent agree that no provision of Chapter 112, Part III, Florida Statutes is applicable to the issue before this court  namely, the authority of the Commission to do other than conduct an investigation and make a public report. [Emphasis added.]
354 So.2d at 89.
Inherent in the framing of this issue is a recognition that the commission may conduct an investigation and make a public report. The district court, therefore, must have believed the commission was seeking to do more than those two clearly authorized acts. (C) The language of the court in comparing the authority of the executive or judicial branches of government with the authority granted the Florida Commission on Ethics adds further support:
Just as the executive or judicial branch has no authority to determine the qualifications of a Senator to be seated, the Florida Commission on Ethics has no power to make this determination, or to enter a finding of probable cause. [Emphasis added.]
354 So.2d at 89.
The words "to make this determination" obviously refer to "the qualifications of a Senator to be seated." (D) The court's statement of the commission's authority is also indicative of the court's belief that something more than the filing of a report was intended:
[T]he Florida Commission on Ethics has the authority to conduct an investigation of complaints alleging a violation of Article II, Section 8, Florida Constitution and to make public its report by distribution to all news media or by filing the same with the Secretary of State as it may choose. [Emphasis added.]
354 So.2d 89.
Again, the court makes clear that at the conclusion of the investigation a report may be distributed as the commission chooses. (E) Finally, in the remedy section of the opinion, the court states:
That portion of the order of the Florida Commission on Ethics purporting to find probable cause of a violation by the petitioners ... and purporting to direct the filing of such finding as an official document with the President of the Senate transcends the constitutional grant of power to the Commission .. . [Emphasis added.]
354 So.2d at 89.
From a full and careful reading of the opinion, we find that it holds that the Commission on Ethics may not, after conducting an investigation, transmit a copy of its report to the President of the Senate in an effort to trigger disciplinary action against a senator. We agree.
The commission took no appeal from this ruling; it is, therefore, binding.[3]

II
We now turn our attention to the subsequent action of the commission shown by its report of February 15, 1978. That report provided, in pertinent part, as follows:
2. Pursuant to said complaints this Commission conducted an investigation and hereby enters its public report, finding as follows:
a. A sworn complaint was duly filed with this Commission pursuant to Section 8(f) of Article II of the Constitution of the State of Florida.
b. The investigation pursuant to said complaint and said constitutional provision reveals that the above-named parties did not file full and public disclosure of their financial interests as required by Article II, Section 8(a) and *336 (h)(1) of the Constitution of the State of Florida.
c. By failing to file such disclosure, the above-named parties have breached the public trust.
3. This finding constitutes a public report of said investigation and shall be delivered to the news media of this state and shall be made available to persons requesting it.
4. Persons or agencies affected hereby may, pursuant to the other constitutional mandates and statutes of this state that may also affect them, govern themselves accordingly.
As to the provisions of paragraph 2(a), 2(b), 3, and 4, the commission admittedly acted properly. The First District Court's December 23, 1977, opinion directly passes on the commission's duty to receive complaints, conduct investigations, and file public reports. Our question, then, is the propriety of paragraph 2(c) of the commission report which finds that the conduct engaged in by the senators constituted a breach of the public trust. This was a new finding under the constitutional authority rather than the statutory authority, based on the same investigation.
We agree with the parties that the opinion of April 6, 1978, (Plante v. The Florida Commission on Ethics, 356 So.2d 1353 (Fla. 1st DCA 1978)), is unclear in several respects. In reviewing the December 23, 1977, case (354 So.2d 87), the court stated the holding to be:
... it was considered, held and determined that, as to a member of the Legislature of Florida, the respondent was without authority to enter any judgment as to "probable cause" that failure on the part of such member to file financial disclosure statements constituted a breach of public trust.
356 So.2d at 1354.
This recitation of the holding of the previous case is followed by the following language:
It is blatantly apparent that a body, such as the Commission, found without even the authority to find "probable cause" that an offense had been committed may not subsequently find such person "guilty" of a breach of the public trust by reason of failure to make such filing. [Emphasis added.]
356 So.2d at 1354.
The First District Court then goes on to find that the commission's February 15, 1978, report is "in plain conflict with the order and opinion of this Court." 356 So.2d at 1354. We disagree. In our view, the second opinion holds that the Commission on Ethics may not publish any conclusion in its public report. Is this ruling different from the ruling of December 23, 1977? If it is the same ruling, the commission is collaterally estopped from relitigating the issue or the ruling is res adjudicata. Mobil Oil Corp. v. Shevin, 354 So.2d 372 (Fla. 1977); Seaboard Coast Line Railroad Co. v. Cox, 338 So.2d 190 (Fla. 1976).
The December 23, 1977, ruling held that the commission could not make a probable cause finding and thereby commence disciplinary action against a senator. The April 6, 1978, opinion held that the commission could not publish any conclusion following an investigation. Since the holdings are different, the commission may appeal, and the decision is properly before this court.
Could the people of Florida have adopted the pertinent provisions of the Sunshine Amendment under review here with the thought that when a complaint was filed an investigation would be conducted without any conclusion being reached? The Commission is charged with the duty to "conduct investigations and make public reports on all complaints concerning breach of public trust." (Emphasis added.) As we understand appellees' position, the commission may make a full investigation and summarize the evidence, but it may not reach a conclusion as to whether the conduct proved constitutes a breach of public trust. There is no definition in the constitution of what constitutes a "public report." It is this court's duty to construe provisions of the constitution. Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976). A reading *337 of the language, with the Sunshine Amendment's purpose in mind, and common sense, dictate that the commission reach some conclusion at the end of an investigation. Inherent in reaching such a conclusion is the power of the commission to decide what is a breach of the public trust. The commission is the only agency that has the authority initially to construe the constitution on this point. Myers v. Hawkins, 362 So.2d 926 (Fla. 1978).
Is the conclusion reached by the Commission on Ethics pursuant to article II, section 8(f), binding on the legislature? It is not. It is a public report for public discussion, and it does not commence official action for discipline.

III
We must next determine whether the filing of the public report with a conclusion as to breach of trust infringes upon article III, section 4(d), Florida Constitution. That section provides:
(d) Each house may punish a member for contempt or disorderly conduct and, by a two-thirds vote of its membership, may expel a member.
Since a finding of the Commission on Ethics is merely a public report that does not penalize, does not affect qualifications, does not seek to punish a member of the legislature, and does not result in the unseating of a member, it does not infringe on article III, section 4(d), Florida Constitution.

IV
Finally, we must determine whether the financial disclosure provisions of article II, section 8, Florida Constitution, are applicable to legislators whose terms in office commenced prior to its effective date. In Myers v. Hawkins, 362 So.2d 926 (Fla. 1978), we held the provisions of article II, section 8(e), which bar state legislators from practicing law before state agencies other than judicial tribunals, inapplicable to persons who held office on the effective date of the amendment. Emphasizing that there was "absolutely no employment limitation when the term of office was sought" and that the "new and onerous" constitutional requirements substantially abrogated Myers' status as a legislator and member of The Florida Bar, the court refused to apply those provisions to incumbent legislators. As stated by the court:
To apply newly-created professional limitations on a part-time Florida legislator in the midst of his term of office obviously defeats expectations honestly arrived at when the office was initially sought.
362 So.2d at 935.
We are urged to hold that the disclosural mandates of article II, sections 8(a) and (h) must likewise be deemed inapplicable to legislators who assumed office prior to the effective date of the constitutional amendment. We decline to do so.

A.
In the first place, the financial reporting requirements imposed upon state officers under article II, section 8, require no curtailment of non-legislative employment opportunities as do the professional limitations considered in Myers. A legislator is free to conduct his non-legislative affairs in the same manner as he had prior to the adoption of the amendment. Although an incumbent may alter his non-legislative activity in response to these disclosural duties, the constitution does not mandate the change. We perceive the situation here to be more like that in Holley v. Adams, 238 So.2d 401 (Fla. 1970), than like that facing the court in Myers. In Holley, we applied the newly enacted "resign to run" statute to incumbent office holders, recognizing that it was not a direct limitation upon their right to seek another office, but that it left with the incumbent "the choice under the statute to retain [his office] unmolested or give it up and seek another." Likewise, the disclosural obligations imposed upon state officers under article II, section 8, do not proscribe any financial activity, but leave with the officeholder the choice to continue or curtail his current financial practices.

*338 B.
Furthermore, this constitutional provision does not impose "new and onerous requirements" on incumbents who wish to continue in office. State legislators have been required to publicly disclose personal financial information since the enactment of section 112.3145, Florida Statutes, in 1974. This statute mandates disclosure of a wide range of financial interests including all sources of personal income in excess of five percent of gross personal income, the location and description of nonresident real property in Florida in which the officer owns more than a five percent interest, and a list in order of descending value of all persons and organizations from whom all gifts were received exceeding $100. Under article II, section 8(a), Florida Constitution, legislators must file a sworn statement showing net worth and identifying by value each asset and liability in excess of $1,000 together with either a copy of the officers' most recent federal income tax return or a sworn statement identifying each separate source and amount of income which exceeds $1,000. By establishing the $1,000 demarcation and requiring the identification by value of each separate asset, the constitution fashions a broader disclosural mandate than does the statute. In light of the pre-existing statute, however, we do not consider the expanded disclosural requirements to be so new and onerous as to defeat an incumbent's honest expectations regarding the requirements of office conceived upon election. In Myers, we refused to apply the previously nonexistent employment limitations to legislators who had taken office prior to the effective date of the new restrictions. We now conclude that the constitutional expansion of preexisting disclosural requirements during a legislator's tenure in office does not insulate that legislator from compliance with the added constitutional directives.
We therefore hold that the disclosural provisions of article II, section 8, may properly be applied to legislators who assumed their present terms in office prior to the effective date of the constitutional amendment. We further hold that the Commission on Ethics, under authority granted by article II, section 8(f), may receive complaints, conduct investigations, issue public reports, and reach conclusions based upon the proof presented on whether persons covered by the act have breached the public trust. Finally, we hold that any conclusion reached by the Commission on Ethics is not binding upon any other official body or officer.
Accordingly, the opinion of the First District Court of Appeal reported at 356 So.2d 1353 (Fla. 1st DCA 1978), is quashed.
It is so ordered.
BOYD, OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ENGLAND, C.J., concurs specially with an opinion.
ADKINS, J., dissents with an opinion.
ENGLAND, Chief Justice, concurring specially.
I fully agree with the Court's conclusions as to all of the issues in this case. As regards the application of the financial disclosure provisions to these senators I would add one additional thought.
I do not view the new financial disclosure requirements of the Constitution as an impermissible alteration of the conditions or qualifications of officeholding, tantamount to an "ouster" from office. We said in Myers:
Not every statutory or constitutional impairment in the expectations or in the status of officeholders, either in their official or private capacity, will operate only as to future officeholders. This case does not present an occasion to announce other circumstances in which an impairment would be considered tantamount to an ouster, to use the Reynolds [Reynolds v. Roan, 213 So.2d 425 (Fla. 1968)] phraseology. Wherever a line may ultimately be drawn to separate permissible impairment from that which is impermissible, it is clear that this constitutional change so substantially abrogates Myers' status as a *339 part-time legislator and as a member of The Florida Bar that it would fall well outside the established boundary.[1]
By virtue of seeking and holding public office, public officers inherently lack the degree of privacy possessed by other citizens. The effect of disclosure under the Sunshine Amendment is to expose their financial affairs to public scrutiny, to a degree previously not demanded by political considerations or by state law. This change, although unanticipated at the time the office was sought, is no more than a change in degree of an aspect of privacy which had already been freely relinquished.[2]
ADKINS, Justice, dissenting.
I dissent on the ground that we have no jurisdiction. The majority holds that the decision of the district court of appeal, Plante v. Florida Commission on Ethics, 356 So.2d 1353 (Fla. 1st DCA 1978) (referred to as Plante II), construes a provision of the state constitution. Art. V, § 3(b)(1). We should exercise greater restraint in the exercise of our jurisdiction.
The district court of appeal in Plante v. Florida Commission on Ethics, 354 So.2d 87, 89 (Fla. 1st DCA) (referred to as Plante I), said:
The separation and independence of the executive, judicial and legislative branches of government is well-established and is one of the basic principles upon which our system of government is founded. One branch of government does not have the authority to dilute or destroy the powers vested in another branch. Just as the executive or judicial branch has no authority to determine the qualifications of a Senator to be seated, the Florida Commission on Ethics has no power to make this determination, or to enter a finding of probable cause.
Article II, § 8, Florida Constitution in no way dilutes the power vested in the Senate to serve as the sole body with authority to pass judgment on the discipline or qualifications of one of its members.
It, therefore, follows that under Article II, § 8, Florida Constitution, generally known as the Sunshine Amendment, the Florida Commission on Ethics has the authority to conduct an investigation of complaints alleging a violation of Article II, § 8, Florida Constitution and to make public its report by distribution to all news media or by filing the same with the Secretary of State as it may choose. The Commission has no authority to find probable cause that a member of the House or Senate has violated the Constitution.
The Florida Commission on Ethics elected to rely on this decision as it did not seek any review in this Court. We would have had jurisdiction of this matter, for the decision clearly construed the state constitution.
After this decision the commission met and filed a report stating that the senators, by failing to file full and public disclosure, had breached the public trust. The senators sought relief in the district court, contending that the February 1978 report was in clear violation of the order and opinion of the district court in Plante I. This was the only question confronting the district court when it said:
It appears from the pleadings filed before this Court that the respondent Commission, on February 14, 1978, entered its formal order, paragraph 2(c) thereof, ruling that petitioners "by failing to file such disclosure, the above-named parties have breached the public trust."
It is blatantly apparent that a body, such as the Commission, found without even the authority to find "probable cause" that an offense has been committed may not subsequently find such person "guilty" of a breach of the public trust by reason of failure to make such filing.
Paragraph 2(c) of the final order and public report of said Commission of date *340 February 15, 1978, being in plain conflict with the order and opinion of this Court, is void and without any force and effect.
356 So.2d 1353, 1354.
When the commission failed to seek review of Plante I, the decision of the court became the law of the case. The decision of the district court was rendered on a particular issue and was conclusive as to the parties and the issues decided therein. See 3 Fla.Jur.2d 415, at 569 (1978).
The decision in Plante II held that the February 1978 report of the commission violated the order of the court in Plante I. The February 1978 report was necessarily considered in conjunction with the decision in Plante I and did not involve any new construction or interpretation of a provision of the Florida Constitution.
The decisions of the district court of appeal were clear. In an effort to circumvent the error of the commission in not seeking a review of Plante I, the majority of my colleagues have muddied the murky waters of jurisdiction even more.
I also disagree with the majority on the merits. In my opinion Myers v. Hawkins, 362 So.2d 926 (Fla. 1978), is a controlling precedent.
The constitutional provision was not applicable to Myers because the amendment was adopted after his term of office began and affected his right to pursue his profession in the law. We said this right should be protected.
On the other hand the voters have the right to representation by the senators of their choice without the imposition of such subsequent additional burdens being placed upon the office that the elected officials would resign. Their rights deserve the same consideration as the private rights of a senator.
I would either recede from Myers and apply the constitutional provision to all, or follow Myers and allow the same exception to these senators. Certainly the people, in adopting the amendment to the constitution, did not contemplate such theoretical distinctions without a difference.
Holley v. Adams, 238 So.2d 401 (Fla. 1970), of course, is not applicable, for the "resign to run" law would not apply unless the official himself voluntarily sought an office other than one he held.
I would dismiss the appeal.
NOTES
[1] The senators were: Kenneth A. Plante, Dempsey J. Barron, Philip D. Lewis, Jack D. Gordon, and Jon C. Thomas.
[2] The commission was apparently following the statutory procedure outlined in Chapter 112, Part III, Florida Statutes, which is not now before us.
[3] The chairman of the commission stated, after the December 23, 1977, opinion that the commission did not intend to do more than publish a public report. He stated:

... I am sure, again, that I speak for members of the Commission. No member of this Commission, nor has this Commission at any time asserted that it has jurisdiction to discipline a member of the legislature. That is clearly, under the constitution of the State of Florida, a legislative function.
All we have the authority to do is make an investigation and a public report under the dictates of the Sunshine Amendment, ...
[1] 362 So.2d at 935 n. 38.
[2] See Plante v. Gonzalez, 575 F.2d 1119 (5th Cir.1978), cert. denied, ___ U.S. ___, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979).