489 So.2d 10 (1986)
COMMISSION ON ETHICS, State of Florida, et al., Appellants,
v.
Wilma SULLIVAN, et al., Appellees.
No. 67689.
Supreme Court of Florida.
May 8, 1986.
Rehearing Denied June 24, 1986.
*11 Jim Smith, Atty. Gen. and Arden M. Siegendorf, Asst. Atty. Gen., and Philip C. Claypool, Staff Atty., Com'n on Ethics, Tallahassee, for appellants.
Stephen Marc Slepin and George L. Waas of Slepin, Slepin and Waas, Tallahassee, for appellees.
D. Stephen Kahn of Kahn and Dariotis, Tallahassee, amicus curiae for Harry A. Johnston, II, as President of The Florida Senate.
McDONALD, Justice.
The present appeal is another in a series of judicial proceedings arising out of two complaints filed with the Florida Commission on Ethics (FCE) in January 1981 against Wilma Sullivan and her son John Sullivan (the Sullivans) alleging breach of the public trust while each served, respectively, as Supervisor of Elections and Deputy Supervisor of Elections for Leon County. In the instant matter the circuit court in Leon County held that section 112.321(1), Florida Statutes (1983),[1] is unconstitutional as a violation of article II, section 3 (separation of powers); article X, section 3 (vacancy in office); and article IV, section 6 (executive departments), of the Florida Constitution. On appeal to the first district that court certified to us that the trial court order requires immediate resolution by this Court because the issues are of great public importance and have a great effect upon the proper administration of justice throughout the state. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. We find that the FCE is constitutionally constituted and remand to the trial court for proceedings consistent with this opinion.
In 1976 the people of this state by initiative petition adopted an ethics in government provision for the state constitution. This constitutional amendment declares that "public office is a public trust" and that this trust will be secured and sustained against abuse. Art. II, § 8, Fla. Const. To assure the integrity of this public trust, the amendment further provides for "an independent commission to conduct investigations and make public reports on all complaints concerning breach of public trust by public officers or employees not within the jurisdiction of the judicial qualifications commission." Art. II, § 8(f), Fla. Const. To implement this provision, the amendment provides that the independent commission "shall mean the Florida Commission on Ethics." Art. II, § 8(h)(3), Fla. Const.
The Florida Commission on Ethics referred to by the amendment is the body first created by chapter 74-176, Laws of Florida, and which presently appears at section 112.320, Florida Statutes (1983). Florida Commission on Ethics v. Plante, 369 So.2d 332, (Fla. 1979). While the provisions of article II, section 8(h) remain effective only until the legislature acts to change its provisions by law, there has been no legislation that conflicts with the *12 designation in article II, section 8(h)(3). Hence, the independent commission provided for in article II, section 8(f) remains the FCE. It would also appear that the sunshine amendment to the constitution adopted by implication the statutory method in selecting and appointing members to the commission.
In determining whether section 112.321(1) violates article II, section 3 of the constitution the position the ethics commission holds in our scheme of government is an important, if not determinative, factor. The FCE emphasizes that the demand for an independent commission be taken at its plain meaning. The commission argues that it possesses constitutional status separate and independent from the other branches of Florida government, a position clearly contemplated by the "unless expressly provided herein" clause in article II, section 3 of the Florida Constitution. Indeed, the FCE concludes, given the mission of the independent commission, the independence requirement can only be met by a membership scheme that has persons other than just the governor making appointments to the commission.
The Sullivans, on the other hand, contend that the independence intended by the phrase is merely a truism and claim that all entities and officers of government are presumed by case law to do their job in a fair, impartial, and lawful manner, independent of political manipulations. The FCE must belong to one of the three branches of Florida government. Absent any constitutional status, it can only belong to the executive department because the commission is not a court, and hence a part of the judicial branch, nor the house or senate, and thus a part of the legislative branch. Consequently, by the separation of powers and vacancy clauses of the Florida Constitution this executive branch entity is subject to the appointments clause in article IV, section 1(f), Florida Constitution, which places the power to appoint to all vacancies of the executive branch exclusively with the governor. Thus, the Sullivans claim that the FCE members have been improperly appointed.
Resolving this issue requires that we look to the essential nature and effect of the commission's powers and compare the commission's powers with those assigned to each branch of our government. Florida Motor Lines, Inc. v. Railroad Commissioners, 100 Fla. 538, 129 So. 876 (1930). Accord In re Advisory Opinion to the Governor, 223 So.2d 35 (Fla. 1969). Our research reveals that the FCE is neither a separate constitutional entity nor is it a part of the executive branch.
The declaration of policy for the organizational structure of Florida government provides that "[t]he executive branch has the purpose of executing the programs and policies adopted by the Legislature and of making policy recommendations to the Legislature." § 20.02(1), Fla. Stat. (1983). Inherent in the nature of this executive power is the ability to take authoritative action to fulfill the charge of faithfully enforcing the laws. The duties of the FCE are not commensurate with these executive responsibilities.
The constitution provides that the independent commission shall "conduct investigations and make public reports." Art. II, § 8(f), Fla. Const. In implementing this requirement section 112.322 provides the FCE with the authority to receive sworn complaints, conduct hearings, receive oral or written testimony, issue advisory opinions, subpoena and audit records, compel the attendance and testimony of witnesses, and administer oaths. These powers, however, merely supplement the general right to conduct investigations and make public reports. As to the nature of this investigative and reporting power, we held in Plante that a report of the commission "does not commence official action for discipline," nor does it in any other way penalize, affect qualifications, punish, or unseat an officeholder. 369 So.2d at 337.[2] Part III of chapter 112, Florida Statutes, also vests *13 the FCE with responsibilities under the state's financial disclosure laws. But the FCE's powers extend only to the development of reporting forms (sections 112.3145(5) and 112.3147) and the ability to grant an extension of time for filing the required disclosure (section 112.3151). The actual filing of the disclosure statements is assigned to the secretary of state and to various other public officers. §§ 112.313(9)(b), 112.3145(2)(c), (4), Fla. Stat. (Supp. 1984). The penalties under the ethics code and the power to enforce its provisions are also specifically left to the governor, legislature, attorney general, and other public officers. See, e.g., §§ 112.317, 112.324(3)(5). In short, the commission administers no program; it enforces no law.
The FCE is also not a part of the judicial branch. The judicial power is defined by the declaration of policy as follows: "The judicial branch has the purpose of determining the constitutional propriety of the policies and programs and of adjudicating any conflicts arising from the interpretation or application of the laws." § 20.02(1). In perhaps the most famous characterization of the judicial power, Chief Justice John Marshall said: "It is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). The FCE has no such power.
Section 112.322(3) provides the commission with the authority to issue advisory opinions to interpret or advise on the applicability of the state's ethics code. Those who propound the questions are bound by the opinion. When reviewed by the courts, however, these opinions are only persuasive; they are not binding. These advisory opinions are clearly distinguishable from decisions rendered by the courts, which are binding unless on review by a superior court reversible error is shown to exist in the decision. The attorney general of this state has a power similar to the FCE's to issue official opinions, but such power alone, and without any other constitutional demand, would not make the attorney general a part of the judicial branch. Cf. § 16.01(3), Fla. Stat. (1983) (ability of the attorney general to issue advisory opinions); Beverly v. Division of Beverage, Department of Business Regulation, 282 So.2d 657, 660 (Fla. 1st DCA 1973) (opinions of attorney general are persuasive but not binding).
Regarding the FCE's power to conduct investigations, while this power appears to be of a quasi-judicial nature, it is not. Black's Law Dictionary defines a quasi-judicial power as "the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." 1121 (5th edition 1979) (emphasis added). As stated previously, the inability of the commission to take any kind of enforcement action based on its investigations means that the commission does not exercise even quasi-judicial powers. This lack of judicial authoritativeness distinguishes the commission's opinions from the adjudication of rights that occurs by the judiciary.
Turning now to the powers of the legislative branch, the declaration of policy provides that "[t]he legislative branch has the broad purpose of determining policies and programs and reviewing program performance." § 20.02(1). While the legislative power is vested in the senate and the house, certain legislative-related activities need not be performed or strictly divided between the house and senate. Indeed, under the umbrella of the legislative branch in Florida a number of entities exist to assist the legislature by reviewing programs and policies.
The first significant legislative branch entity is the Auditor General's Office. The auditor general conducts financial and performance audits of state agencies with such reports being issued to the Joint Legislative Auditing Committee, the governor, the subject agency, and any other relevant governmental entity for appropriate action. It must be noted that the auditor general cannot command or coerce compliance; this *14 power is left to others. Art. III, § 2, Fla. Const.; §§ 11.40-11.48, Fla. Stat. (1983 & Supp. 1984). A second legislative agency is the Public Service Commission, which sets rates and settles jurisdictional boundaries for certain utilities in Florida with its decisions subject to judicial review. Examining the powers and position of the PSC, it is interesting to note that the ratemaking decisions of the commission will not be overturned by this Court if supported by clear and convincing evidence in the record. Art. V, § 3(b)(2), Fla. Const.; Title XXVII, Fla. Stat. (1983 & Supp. 1984).[3] Another legislative agency is the Office of the Public Counsel. The public counsel represents the people of Florida at the Public Service Commission and other appropriate federal regulatory bodies. The public counsel's powers, however, are limited to the preparation and issuing of reports and recommendations to the Public Service Commission, governor, or legislature concerning matters within the jurisdiction of the commission; in its essentials, these reports and recommendations are informational materials that can be accepted or rejected. § 350.0611, Fla. Stat. (1983). Finally, there is the Joint Administrative Procedures Committee. This group examines existing and proposed rules made by agencies in accordance with chapter 120, Florida Statutes, for compliance with section 120.545(1)(a). As for the committee's power, while it may object to a proposed or existing rule, the committee has no authority to prevent an agency from filing or continuing the rule without modification. § 120.545, Fla. Stat. (1983).
With the exception of the Public Service Commission, these entities have in common their ability to investigate and report but not the ability to take actions others must adhere to. Indeed, the legislature each session creates a number of entities, mostly short-term advisory commissions or task forces, the purpose of which is to seek information, investigate problems, and inform the appropriate public officers of their findings and recommendations.
The authority of the FCE is most closely analogous with the powers exercised by these legislative branch entities. Its ability to investigate and report free from day-to-day involvement in our government is at the heart of the FCE's position just as it is for the auditor general and the Joint Administrative Procedures Committee. In the final analysis the power of the commission lies in its status as an official forum in which public opinion can be informed and mobilized; the results of its reports, much like those of the auditor general, do not right wrongs but rather put the public and various appropriate officeholders on notice. We hold, therefore, that the FCE is a legislative branch entity.[4]
As a part of the legislative branch, the membership and reporting scheme of the FCE is entirely consistent with the legislature's ability to staff its sub-units in any manner it deems proper that does not violate the constitution. The present appointments scheme is constitutionally sound. See, e.g., §§ 350.001, 350.03, Fla. Stat. (1983) (delegation to the governor authority to appoint and remove public service commission members).
In summary, the FCE is a part of the legislative branch of Florida government. As such, its membership may be drawn in *15 whatever manner the legislature deems appropriate. Consequently, the present appointments scheme does not violate article II, section 3; article X, section 3; or article IV, section 6, of the Florida Constitution. We therefore reverse the order of the trial court and remand for proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and OVERTON and EHRLICH, JJ., concur.
ADKINS and SHAW, JJ., dissent.
NOTES
[1] This statute reads as follows:

(1) The commission shall be composed of nine members. Five of these members shall be appointed by the Governor, no more than three of whom shall be from the same political party, subject to confirmation by the Senate. One member appointed by the Governor shall be a former city or county official. Two members shall be appointed by the Speaker of the House of Representatives, and two members shall be appointed by the President of the Senate. Neither the Speaker of the House of Representatives nor the President of the Senate shall appoint more than one member from the same political party. No member may hold any public employment. All members shall serve 2-year terms, except that four of the initial members appointed by the Governor shall serve 1-year terms. All succeeding appointments shall be for 2 years. No member shall serve more than two full terms in succession. Any member of the commission may be removed for cause by majority vote of the Governor, the President of the Senate, the Speaker of the House of Representatives, and the Chief Justice of the Supreme Court.
[2] While Plante specifically spoke to reports about members of the legislature, its analysis is applicable to any officeholder subject to an investigation or report by the FCE.
[3] While this Court has found the PSC to be a part of either the legislative or judicial branch, In re Advisory Opinion To The Governor, 223 So.2d 35 (Fla. 1969), the legislature has declared it to be a legislative branch entity, § 350.001, Fla. Stat. (1983). Nevertheless, the PSC has been required to adhere to the Administrative Procedures Act. ASI, Inc. v. Florida Public Service Com'n, 334 So.2d 594 (Fla. 1976).
[4] The attorney general reached a similar conclusion in 1976. 1976 Op.Att'y Gen.Fla. 076-54 (Mar. 10, 1976). Dr. Allen Morris, perhaps the foremost authority on Florida government, has continued to list the FCE as a part of the legislative branch though with the caveat that the 1976 Sunshine Amendment, now article II, section 8, of the Florida Constitution elevated the commission to "constitutional status" and that the commission's placement among the three departments has not been "determined either judicially or otherwise" since the attorney general's 1976 opinion. A. Morris, The Florida Handbook: 1983-1984 at 122 (19th ed. 1985).