676 So.2d 1380 (1996)
Katherine A. HOOVER, M.D., Appellant,
v.
The AGENCY FOR HEALTH CARE ADMINISTRATION, etc., Appellee.
No. 95-3037.
District Court of Appeal of Florida, Third District.
June 26, 1996.
Katherine A. Hoover, M.D., Lost Creek, W.Va., in pro. per.
Kathryn L. Kasprzak, Senior Attorney, for appellee.
Before BARKDULL, JORGENSON and GODERICH, JJ.
JORGENSON, Judge.
Dr. Katherine Anne Hoover, a board-certified physician in internal medicine, appeals a final order of the Board of Medicine penalizing her and restricting her license to practice *1381 medicine in the State of Florida. We reverse because the board has once again engaged in the uniformly rejected practice of overzealously supplanting a hearing officer's valid findings of fact regarding a doctor's prescription practices with its own opinion in a case founded on a woefully inadequate quantum of evidence.

FACTS
In March 1994, the Department of Business and Professional Regulation (predecessor in these proceedings to the Agency for Health Care Administration) filed an administrative complaint alleging that Dr. Hoover (1) inappropriately and excessively prescribed various Schedule II controlled substances to seven of her patients[1] and (2) provided care of those patients that fell below that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances; in violation of sections 458.331(1)(q) and (t), Florida Statutes, respectively.[2],[3] All seven of the patients had been treated by Dr. Hoover for intractable pain arising from various non-cancerous diseases or ailments.[4]
Dr. Hoover disputed the allegations of the administrative complaint and requested a formal hearing. At the hearing, the agency presented testimony of its investigator; several pharmacists from Key West, where the doctor was practicing at the time of the alleged infractions; and two agency expert physicians. The doctor testified and presented the testimony of two Key West pharmacists and her own expert physician.

The Agency's Case
The agency presented the testimony of two physicians as experts. Neither had examined any of the patients or their medical records. The sole basis for the opinions of the agency physicians was computer printouts from pharmacies in Key West where the doctor's patients had filled their prescriptions. These printouts indicated only the quantity of each drug filled for each patient, occasionally referring to a simplified diagnosis. Both of these physicians practiced internal medicine and neither specialized in the *1382 care of chronic pain. In fact, both doctors testified that they did not treat but referred their chronic pain patients to pain management clinics. The hearing officer found that this was a common practice among physiciansperhaps to avoid prosecutions like this case.[5] Both doctors "candidly testified that without being provided with copies of the medical records for those patients they could not evaluate Respondent's diagnoses of what alternative modalities were attempted or what testing was done to support the use of the medication chosen by Respondent to treat those patients." Recommended Order at 17. Despite this paucity of evidence, lack of familiarity, and seeming lack of expertise, the agency's physicians testified at the hearing that the doctor had prescribed excessive, perhaps lethal amounts of narcotics, and had practiced below the standard of care.

Dr. Hoover's Response
Dr. Hoover testified in great detail concerning the condition of each of the patients, her diagnoses and courses of treatment, alternatives attempted, the patients' need for medication, the uniformly improved function of the patients with the amount of medication prescribed, and her frequency of writing prescriptions to allow her close monitoring of the patients. She presented corroborating physician testimony regarding the appropriateness of the particular medications and the amounts prescribed and her office-setting response to the patients' requests for relief from intractable pain.

Disposition of the Administrative Complaint
Following post-hearing submissions, the hearing officer issued her recommended order finding that the agency had failed to meet its burden of proof on all charges. The hearing officer concluded, for instance, that "Petitioner failed to provide its experts with adequate information to show the necessary similar conditions and circumstances upon which they could render opinions that showed clearly and convincingly that Respondent failed to meet the standard of care required of her in her treatment of the patients in question." Recommended Order at 20.
The agency filed exceptions to the recommended findings of fact and conclusions of law as to five of the seven patients.[6] The board of medicine accepted all the agency's exceptions, amended the findings of fact in accordance with the agency's suggestions, and found the doctor in violation of sections 458.331(1)(q) and (t), Florida Statutes. The board imposed the penalty recommended by the agency: a reprimand, a $4,000 administrative fine, continuing medical education on prescribing abusable drugs, and two years probation. This appeal follows.

DISCUSSION
In a proceeding to suspend, revoke, or impose other discipline upon a professional license, the administrative agency must prove the charges by clear and convincing evidence. Department of Banking & Fin., Div. of Securities & Investor Protection v. Osborne Stern & Co., 670 So.2d 932 (Fla. 1996) (citing Ferris v. Turlington, 510 So.2d 292 (Fla.1987)); Nair v. Dept. of Bus. & Prof. Reg., Bd. of Medicine, 654 So.2d 205 (Fla. 1st DCA 1995). Section 120.57(1)(b)(10), Florida Statutes, sets forth the medical board's responsibility in reviewing and acting upon a recommended order submitted by a hearing officer:
The agency may adopt the recommended order as the final order of the agency. The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the recommended order. The agency may not reject or modify the findings of fact, including findings of fact that form the basis for an agency statement, unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence *1383 or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept the recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action.
(Emphasis added.) In this case, the board "merely stated its conclusion that the [rejected] findings [of fact] were not supported by competent substantial evidence." Reese v. Department of Prof. Reg., Bd. of Medical Examiners, 471 So.2d 601 (Fla. 1st DCA 1985). This determination violated the requirement that the board must state valid reasons for rejecting findings with particularity.

Hearing Officer's Findings of Fact
For each of the five patients, the hearing officer found the prescribing practices of Doctor Hoover to be appropriate. This was based upon (1) the doctor's testimony regarding the specific care given, (2) the corroborating testimony of her physician witness, and (3) the fact that the doctor's prescriptions did not exceed the federal guidelines for treatment of intractable pain in cancer patients,[7] though none of the five patients were diagnosed as suffering from cancer.
The board rejected these findings as not based on competent substantial evidence. As particular reasons, the board adopted the arguments of the agency's exceptions to the recommended order that (1) the hearing officer's findings were erroneously based on irrelevant federal guidelines, and (2) the agency's physicians had testified that the doctor's prescription pattern was below the standard of care and outside the practice of medicine. The board's purported reasons for the rejection of findings do not state in particular that the findings are not based on competent substantial evidence, but merely substitute the board's preference for the conclusions of its experts.
First, the board mischaracterizes the hearing officer's reference to the federal guidelines. The board reasoned in its final order that "[t]he record reflects that the federal guidelines relied upon by the Hearing Officer for this finding were designed for cancer patients and [the five patients at issue were] not being treated for cancer." It is true, as the hearing officer noted, that
Respondent presented expert evidence that there is a set of guidelines which have been issued for the use of Schedule II controlled substances to treat intractable pain and that although those guidelines were established to guide physicians in treating cancer patients, those are the only guidelines available at this time. Utilizing those guidelines, because they exist, the amount of medication prescribed by Respondent to the patients in question was not excessive or inappropriate.
Recommended Order at 18-19. In so finding, however, the hearing officer did not, as the board suggests, rely solely upon the federal guidelines in its ruling that the doctor's prescribing practices were not excessive. Rather, the federal guidelines merely buttressed fact findings that were independently supported by the hearing officer's determination of the persuasiveness and credibility of the physician witnesses on each side. For example, though he admitted he had not even reviewed the federal guidelines, one of the agency physicians asserted that the amounts prescribed constituted a "tremendous number of pills" and that the doses involved would be lethal. That Dr. Hoover's prescriptions fell within the guidelines for chronic-pained cancer patients may properly be considered to refute this assertion. Such a use of the federal guidelines was relevant and reasonable.[8]
*1384 Second, Dr. Hoover testified in great detail concerning her treatment of each patient, the patient's progress under the medication she prescribed, and that the treatment was within the standard of care and practice of medicine. The hearing officer, as arbiter of credibility, was entitled to believe what the doctor and her physician expert opined. Nest v. Department of Prof. Reg., Bd. of Medical Examiners, 490 So.2d 987, 989 (Fla. 1st DCA 1986) ("the ability to practice with reasonable skill and safety is essentially an ultimate finding of fact"). The agency's witnesses' ultimate conclusions do not strip the hearing officer's reliance upon Dr. Hoover of its competence and substantiality. Reese. The hearing officer was entitled to give Dr. Hoover's testimony greater weight than that of the agency's witnesses, who did not examine these patients or regularly engage in the treatment of intractable pain.
This point was articulated by the First District Court of Appeal under similar facts in Reese. In Reese, the agency charged the doctor with 83 counts of violating various provisions of Chapter 458. The allegations were based primarily on the agency's belief that the doctor was over-prescribing Schedule II drugs. Both sides presented the testimony of physician witnesses, which conflicted. The testimony of the agency's experts supported the allegations of the administrative complaint. The hearing officer found the testimony of the doctor's witnesses more persuasive, found no deviation from the acceptable level of care, and further found that the "drugs were prescribed in appropriate quantities and duration, were for medically justifiable purposes, and were not prescribed outside the course of [the doctor's] medical practice." 471 So.2d at 602. The board accepted most of the agency's exceptions to the hearing officer's recommended order, and rejected the hearing officer's findings of fact as not supported by competent substantial evidence. The Reese court held that the board's rejection of the findings was not valid because there was substantial competent evidence to support the findings, and the board did not state reasons for rejection with particularity, but "merely stated a conclusion substituting its opinion for that of the finder of fact." Id. at 603.
It is surprising to see agency disciplinary action based upon such a paucity of evidence after our admonitions in Sneij v. Department of Professional Regulation, Board of Medical Examiners, 454 So.2d 795 (Fla. 3d DCA 1984). In Sneij, the board rejected the hearing officer's determination that the agency had failed to establish by clear and convincing evidence that the doctor had, among other things, inappropriately prescribed controlled substances or prescribed excessive amounts of controlled substances. This Court noted the sparse and inadequate medical records and investigative file upon which the agency's physician witness had based his opinion:
The witness did not talk to any of the patients involved nor did these patients testify at the hearing. Dr. Sneij also testified at the hearing and admitted that his medical records were poorly kept. He denied any other wrongdoing, however, although his memory of the patients involved was somewhat shaky. No other witnesses testified at the hearing. Plainly, this evidence was woefully insufficient to establish any of the charges against Dr. Sneij, save for the record-keeping violations.
....
Beyond that, the law is clear that the Board was not free to reject the hearing examiner's findings when, as here, these findings were based on competent, substantial evidence. This being so, the Board had no authority, in any event, to reject summarily the hearing examiner's findings and to substitute its own findings therefor.
Id. at 796 (citations omitted). Similarly, in this case the board has again supplanted valid findings of fact regarding a doctor's prescription practices with its own opinion.

Hearing Officer's Conclusions of Law
Finally, we hold the board's rejections of the hearing officer's five conclusions of law each to be either incorrect or without consequence. The agency filed exceptions to five *1385 conclusions of law by the hearing officer: (1) the computer printouts from two of the pharmacies could not be considered as evidence because they contained vague, unexplained entries; (2) the intractable pain treatment law, section 458.326, Florida Statutes, which became effective in 1994 supports the finding of no infraction; (3) the agency failed to offer any standard by which Doctor Hoover's prescription practices could be evaluated; (4) the federal guidelines for cancer patients provided a standard for dosages which was complied with in these cases; and (5) the agency failed to show the conditions and circumstances surrounding the treatment of each of the five patients.
The board adopted the agency's reasoning and rejected each of these conclusions of law. We have already discussed the propriety of the hearing officer's limited consideration of the persuasive weight of the federal guidelines. Similarly, the hearing officer explicitly recognized that the 1994 intractable pain law was not in effect at the time of Dr. Hoover's alleged infractions but cited it for a permissible purposeto rebut any claim that there is a strong public policy mandate in favor of the board's draconian policy of policing pain prescription practice. Cf. McDonald v. Department of Banking and Fin., 346 So.2d 569 (Fla. 1st DCA 1977) ("where the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will give correspondingly less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's findings of fact."). Next, even were the disregarded computer printouts to be considered, they only offered evidence similar to the printouts already in evidence and could not eradicate the substantial competent evidence supporting the hearing officer's findings of fact. Finally, whether the hearing officer's pronouncements regarding the failure to offer standards or show conditions and circumstances are legally correct is of no consequencethe hearing officer's findings of fact and uncontested conclusions of law are sufficient to establish that the agency did not prove a violation of Chapter 458 by clear and convincing evidence.
Reversed.
NOTES
[1] As the hearing officer stated in her recommended order,

Controlled substances are categorized by the Drug Enforcement Agency in five different schedules according to their potential for abuse. Schedule I substances are illegal. Schedule II substances, although considered highly addictive, can be prescribed by licensed physicians for medical purposes. Schedule II substances can be narcotic (opiates administered for pain) or non-narcotic. Schedule II narcotics include morphine (morphine sulfate), methadone (dolophine), dilaudid (hydromorphone), and oxycodone (percodan and percoset).
[2] The agency also alleged that Dr. Hoover failed to keep medical records justifying the course of treatment for seven patients in violation of section 458.331(m). The agency did not pursue the records charge after the hearing officer determined that Dr. Hoover had properly transferred her detailed medical records to her patients, or, if available, their successor physicians, when she closed her Key West practice and relocated to West Virginia.
[3] Because we reverse on the merits, we do not reach the issue of whether probable cause was improperly determined. Only the two physician members of the probable cause paneldesignated under section 458.307(b), Florida Statutes (1993), to be composed of three members including one non-physicianwere present and voted at the hearing where probable cause was found. The better practice is to involve the full three-member panel in the probable cause determination, though only a majority vote of these three is required.
[4] Persons suffering from chronic pain (as opposed to acute episodes of pain) for which there is no cure or treatment available that can alleviate the person's pain are said to suffer from "intractable pain." There are two types of intractable pain. The first group are patients with terminal, irreversible illnesses, such as cancer patients. Physicians generally give those patients whatever narcotics they need to alleviate the pain during the end stage of their lives. The second group is composed of patients who suffer from non-terminal disease processes who have tried different specialists and treatments available without achieving relief from their chronic pain. Those persons are generally not treated in family practice settings but rather are referred to pain management centers or pain clinics, in locations where such are available, to have their pain alleviated by treatments such as receiving morphine implants or having doctors perform nerve blocks. Many physicians avoid caring for patients who require Schedule II substances to relieve their suffering.

Recommended Order at 5.
[5] Referral to a pain management clinic was not an option for Dr. Hoover's indigent Key West resident patients.
[6] The agency did not contest the dismissal of the count for failure to keep medical records or the dismissal of the entire administrative complaint as to two of the seven patients.
[7] The former United States Department of Health, Education and Welfare, though its Agency for Health Care Planning and Research, established national guidelines for treatment of moderate to severe pain in cancer patients, using Schedule II narcotics. Recommended Order at 6.
[8] The doctor has argued that the federal guidelines were introduced only because the agency objected to her use of the latest edition of Russell L. Cecil & Robert F. Loeb, A Textbook in Medicine, which gives guidelines for treatment of non-cancerous chronic pain that are similar to the federal guidelines for cancer patients.