694 So.2d 83 (1997)
Gary D. LATHAM, Appellant,
v.
FLORIDA COMMISSION ON ETHICS, Appellee.
No. 96-1224.
District Court of Appeal of Florida, First District.
April 23, 1997.
Rehearing Denied May 23, 1997.
Gary D. Latham, Marianna, pro se.
Robert A. Butterworth, Attorney General and Virlindia Doss, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, Judge.
Appellant Gary D. Latham, a former member of the Florida Parole Commission, challenges a final order of the Commission on Ethics (Commission) adopting a hearing officer's findings of fact and conclusion that Latham violated section 112.313(6), Florida Statutes.[1] According to the Commission's Final Order and Public Report, Latham violated that section of the Code of Ethics, chapter 112, Part III, Florida Statutes, "by engaging in unwanted sexually or romantically oriented behavior toward a subordinate female employee." The Commission, pursuant to section 112.317(1)(a)[2], Florida Statutes, *84 recommended that the Governor impose a civil penalty of $2,500 and give Latham a public censure and reprimand. We reverse because, as Latham argues, the Commission must require proof by clear and convincing evidence before recommending the penalties available for a public officer under section 112.317(1)(a), Florida Statutes.[3] In reaching this conclusion we rely both upon case law and the statutory scheme established by the Ethics Code.
The question of the proper standard of proof to be applied in proceedings before the Commission is one of first impression in this state. Mr. Latham contends that the Commission erred in applying the preponderance of evidence standard. He asserts that a proceeding under the Code of Ethics must require clear and convincing evidence because of the penal nature inherent in a finding of violation and because the penalties at stake include the loss of livelihood and professional reputation.
The Commission argues that in administrative cases, Florida generally adheres to the preponderance of evidence standard. Positing that a Commission proceeding does not implicate a loss of livelihood, the Commission denies that any higher burden of proof applies. The Commission also contends that, even if penalties result, it has no authority to impose "any penalty of any sort." In support of these arguments, the Commission directs us to Commission on Ethics v. Sullivan, 489 So.2d 10 (Fla.1986) and Florida Commission on Ethics v. Plante, 369 So.2d 332 (Fla.1979).
In Sullivan, the supreme court stated:
[W]e held in Plante that a report of the commission "does not commence official action for discipline, nor does it in any other way penalize, affect qualifications, punish, or unseat an officeholder." 369 So.2d at 337.... The penalties under the ethics code and the power to enforce its provisions are also specifically left to the governor, legislature, attorney general, and other public officers ... In short, the commission administers no program; it enforces no law ...
As stated previously, the inability of the commission to take any kind of enforcement action based on its investigations means that the commission does not exercise even quasi-judicial powers. This lack of judicial authoritativeness distinguishes the commission's opinions from the adjudication of rights that occurs by the judiciary.
489 So.2d at 12-13. This language, says the Commission, forecloses any claim that its proceedings are penal in nature, and therefore subject to any burden of proof higher than the traditional preponderance standard. In our view, however, the contexts in which Plante and Sullivan arose are quite unlike that of the present case. The essential holdings in those cases have nothing to do with the burden of proof properly required by the Commission.
At issue in Plante was the "meaning of the words `public report' in article II, section 8(f)" of the Florida Constitution. 369 So.2d at 333. In that case the Commission found probable cause to believe that five named state senators breached the public trust by failing to file full and public disclosure of their financial interests. No issue concerning the burden of proof arose, because the senators never disputed the facts. 369 So.2d at 334. Instead, the senators argued that by issuing a public report, the Commission unconstitutionally sought to infringe upon the constitutional prerogative of the legislature to discipline its own members. The supreme court disagreed and held that the public report, *85 which according to the Plante opinion, made no specific recommendation for discipline or punishment, "is a public report for public discussion, and it does not commence official action for discipline." 369 So.2d at 337. Quite significantly, the court noted that the statutory procedure outlined in chapter 112, part III "is not now before us." 369 So.2d at 334, n. 2.
In Sullivan the supreme court had to decide which branch of government could properly claim the constitutionally-mandated Commission on Ethics as its own. Wilma and John Sullivan, respectively the Supervisor of Elections and Deputy Supervisor of Elections for Leon County, found themselves the subjects of complaints filed with the Commission. The Sullivans argued that the Commission is part of the executive branch, and the power to appoint its members resided exclusively with the governor. They claimed that because section 112.321(1), Florida Statutes (1983) required appointment of Commission members by the Speaker of the House and the President of the Senate, the statute violated article II, section 3 (separation of powers), article IV, section 6 (executive departments), and article X, section 3 (vacancy in office) of the Florida Constitution. The court did not find this argument persuasive, concluding, "The authority of the (Commission) is most closely analogous with the powers exercised by ... legislative branch entities." 489 So.2d at 14. In refuting the Sullivan's executive branch contention, the court doubted the Commission's "ability to take authoritative action to fulfill the charge of faithfully enforcing the laws," such ability being the hallmark of executive power. 489 So.2d at 12. Further refuting the executive power argument, the court recalled its Plante holding: "[A] report of the commission `does not commence official action for discipline,' nor does it in any other way penalize, affect qualifications, punish, or unseat an officeholder." Id. As was true in Plante, nothing in Sullivan treats either the procedures established by the Ethics Code or the burden of proof applicable to such procedures.
The Commission now focuses upon language in Plante and Sullivan emphasizing its "nonpenal" nature, because it correctly recognizes that the power to penalize may carry with it a more demanding standard of proof. Quite recently the supreme court has announced that it will "look to the nature of the proceedings and their consequences to determine the degree of proof required." Department of Bank. and Fin., Div. of Securities & Investor Protection v. Osborne Stern & Co., 670 So.2d 932, 935 (Fla.1996). In Osborne Stern the supreme court for the first time held that "imposition of administrative fines..., like license revocation proceedings, are penal in nature and implicate significant property rights" thus requiring "extension of the clear and convincing evidence standard to justify the imposition of such a fine ..." 670 So.2d at 935.
The analogy in Osborne Stern to license revocation proceedings refers to the earlier decision in Ferris v. Turlington, 510 So.2d 292 (Fla. 1987), which in turn relied upon Reid v. Florida Real Estate Commission, 188 So.2d 846 (Fla. 2d DCA 1966). Ferris adopted the clear and convincing standard for professional license revocation. As the unanimous court observed through Justice Barkett, "In a case where the proceedings implicate the loss of livelihood, an elevated standard is necessary to protect the rights and interests of the accused." 510 So.2d at 295; see also Hoover v. Agency for Health Care Admin., 676 So.2d 1380 (Fla. 3d DCA 1996); Nair v. Department of Bus. & Prof. Reg., Bd. of Medicine, 654 So.2d 205 (Fla. 1st DCA 1995); and Pic N' Save Central Florida, Inc. v. Department of Bus. Reg., Div. of Alcoholic Beverages & Tobacco, 601 So.2d 245 (Fla. 1st DCA 1992). A heightened standard is justified because of the "gravity and magnitude" of such proceedings. Ferris, 510 So.2d at 294.
As Latham points out in his brief, the quality of proof required to discipline a judge must be clear and convincing. In re LaMotte, 341 So.2d 513 (Fla.1977); In re Ward, 654 So.2d 549 (Fla.1995). This is so even where the discipline imposed is merely a public reprimand, with no financial detriment to the judge. Ward. The Commission has offered us no theory for why a judge should receive greater protection (in the form of a *86 higher burden of proof) than should other public officers facing similar consequences.
We must now consider whether, in the present case, the nature of the proceedings and their consequences justify a heightened burden of proof.[4] The Commission takes the view that its proceedings do not implicate any property right or loss of livelihood. It also argues that in any event it has no authority to impose any penalty of any sort. Although these arguments are not entirely lacking in logic and lure, they are overcome by the reality of the statutory scheme and its consequences.
The statute under which Latham was charged, section 112.313(6), has as its touchstone the requirement that the public officer must not "corruptly use or attempt to use his or her official position ..." The connotation generally given to the word "corrupt" suggests that one who is found guilty of being corrupt could well expect to be penalized. Moreover, the bearer of an officially-administered stamp of corruption, may find loss of livelihood among the least of his worries. The wake of such censure can easily sweep away business and political ambitions, station in the community, and the respect and love of family and friends. Personal wealth is, under the holding of Osborne Stern, entitled to the prophylactic benefit of the clear and convincing burden of proof. Yet, our Western ethical tradition teaches us, "A good name is better than fragrant oil." The Holy Scriptures, Ecclesiastes, 7:1 (Jewish Publication Society, 1985).
Sullivan and Plante, on their face, deny the penal nature of the Ethics Code. Our state, however, has longstanding decisional law to the contrary. In State ex rel. Robinson v. Keefe, 111 Fla. 701, 149 So. 638 (1933) the supreme court strictly construed Florida's anti-nepotism act, now included in the ethics code, because it is "an act of such highly penal character." See also City of Miami Beach v. Galbut, 626 So.2d 192, 194 (Fla.1993)(holding that penal nature of the anti-nepotism statute requires strict construction); Kinzer v. State, Comm'n on Ethics, 654 So.2d 1007, 1009 (Fla. 3d DCA 1995) (reversing a final order of the Florida Commission on Ethics which recommended imposition of a civil penalty under the antinepotism law and holding the anti-nepotism law is a civil statute of a penal nature). Under the controlling standard of Ferris and Osborne Stern, we find that the penalties authorized by section 112.317, Florida Statutes implicate a loss of livelihood and more.
Next the Commission argues that it has no authority to penalize. Of course, the Ethics Code does contain a very explicit section on penalties, section 112.317. Violation of the code shall, "in addition to any criminal penalty or other civil penalty involve" constitute grounds for which one may be punished by any one of the following: (1) impeachment, (2) removal from office, (3) suspension from office, (4) public censure and reprimand, or (5) forfeiture of no more than one-third salary per month for no more than twelve months, (6) a civil penalty not to exceed $10,000, and (7) restitution of any pecuniary benefits received because of the violation committed. Without denying the substance of the statute, the Commission points out that under the terms of section 112.324, the Commission does not exact any penalty. Instead, it reports its findings and recommendations "to the proper disciplinary official or body as follows, and such official or body shall have the power to invoke the penalty provisions of the Ethics Code. § 112.324(7), Fla. Stat.
We find two statutory provisions that counter the Commission's claim that it lacks authority. Under the enforcement provision of section 112.317(2) a civil penalty is enforced by the attorney general who brings a civil action. Significantly, however, in that civil action, no defense may be raised that could have been raised by judicial review to *87 the district court of appeal. Accordingly, even though the Commission does not have power to enforce its own orders, all defenses to these orders must be raised before the Commission or the district court or they will be lost when the attorney general moves to enforce a penalty. This section was not before the supreme court in Plante and Sullivan when the court observed that the Commission does not "commence official action for discipline." Under the statute, all legal defenses must be raised in the Ethics Commission proceeding or they are lost at the stage of imposition or enforcement.
We also find significant the provision for judicial review in the Ethics Code. Judicial review is only of "final action by the commission." § 112.3241, Fla. Stat. Thus, court review of administrative action is only available at the point the Commission issues its Final Order and Public Report. This signifies that the Commission's action is not merely symbolic or without substance. Judicial review in the general administrative context is, after all, available only to a "party who is adversely affected by final agency action." § 120.68(1), Fla. Stat. (Supp.1996); Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982 (Fla.1996); Bodenstab v. Department of Prof. Reg., Bd. of Medicine, 648 So.2d 742 (Fla. 1st DCA 1994), rev. denied 659 So.2d 1085 (Fla.1995).
Under section 112.324(7), the Commission must report its findings and recommend appropriate action to "the proper disciplinary official," which in this case is the governor, section 112.324(7)(d). Because the judiciary has no right to intervene in the governor's function[5], it stands to reason that stringent protection should be required at the Commission level. Only final action by the Commission is explicitly subjected to judicial review by section 112.3241. Osborne Stern requires us to look to the nature of the proceedings and their consequences. As a practical matter, the Commission does possess the very real authority to penalize, and it is only in Commission proceedings that safeguards may be required.
We conclude that the result we reach today is mandated by precedent and by our consideration of the realities of the impact of a Commission on Ethics proceeding and report against a public officer. Recognizing that the burden of proof we have adopted will impact a potentially large number of Commission cases, we pose the following question of great public importance to the supreme court:
In Commission on Ethics proceedings against a public officer that may result in recommended penalties pursuant to section 112.317(1)(a), Florida Statutes, must the Commission require proof by clear and convincing evidence?
REVERSED and REMANDED.
ERVIN and BENTON, JJ., concur.
NOTES
[1] 6) MISUSE OF PUBLIC POSITION.No public officer, employee of an agency, or local government attorney shall corruptly use or attempt to use his or her official position or any property or resource which may be within his or her trust, or perform his or her official duties, to secure a special privilege, benefit, or exemption for himself, herself, or others.
[2] Section 112.317(1)(a), Florida Statutes provides:

112.317 Penalties.
(1) Violation of any provision of this part, including, but not limited to, any failure to file any disclosures required by this part or violation of any standard of conduct imposed by this part, or violation of any provision of s. 8, Art. II of the State Constitution, in addition to any criminal penalty or other civil penalty involved, shall, pursuant to applicable constitutional and statutory procedures, constitute grounds for, and may be punished by, one or more of the following:
(a) In the case of a public officer:
1. Impeachment.
2. Removal from office.
3. Suspension from office.
4. Public censure and reprimand.
5. Forfeiture of no more than one-third salary per month for no more than 12 months.
6. A civil penalty not to exceed $10,000.
7. Restitution of any pecuniary benefits received because of the violation committed.
[3] The holding in this case is limited to section 112.317(1)(a), penalties as to public officials. We recognize that the standard of proof for discipline of a career service employee continues to be by a preponderance of the evidence. See Department of Agric. & Consumer Servs. v. Edwards, 654 So.2d 628 (Fla. 1st DCA 1995), rev. denied, 662 So.2d 931 (Fla.1995); Fitzpatrick v. City of Miami Beach, 328 So.2d 578 (Fla. 3d DCA 1976); Florida, Dep't of HRS v. Career Service Comm'n, 289 So.2d 412 (Fla. 4th DCA 1974). A career service employee's dismissal or other discipline is essentially an employment action, and does not warrant the same protection as a public proceeding against an official subject to the penalties found in section 112.317(1)(a), Florida Statutes.
[4] The Commission has located one case, Craven v. State Ethics Commission, 390 Mass. 191, 454 N.E.2d 471 (1983) in which a state court expressly adhered to the preponderance of the evidence standard in an ethics commission matter. In Massachusetts, the commission "may only require that a civil penalty be paid or issue a cease and desist order." Id. 454 N.E.2d at 476. As discussed below, the available penalties in Florida are significantly greater, and, in Florida, the administrative penalty is already subject to the clear and convincing standard. Osborne and Stern. We do not find Craven controlling.
[5] "[U]nder the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights." Trianon Park Condominium Assoc. v. City of Hialeah, 468 So.2d 912, 918 (Fla. 1985).