628 So.2d 1097 (1993)
The OFFICE OF the STATE ATTORNEY, FOURTH JUDICIAL CIRCUIT OF FLORIDA, Petitioner,
v.
Tina PARROTINO, Respondent.
No. 81229.
Supreme Court of Florida.
December 2, 1993.
*1098 Robert E. Warren and J. Baxter Gillespie of Taylor, Moseley & Joyner, Jacksonville, for petitioner.
Darryl D. Kendrick, Jacksonville, for respondent.
Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, amicus curiae for State of Florida.
Arthur I. Jacobs, Fernandina Beach, amicus curiae for Florida Pros. Attys. Ass'n.
Richard A. Barnett, Hollywood, amicus curiae for Academy of Florida Trial Lawyers.
KOGAN, Justice.
We have for review the following questions certified to be of great public importance:
DID A COMMON LAW DUTY OF CARE RUN FROM THE OFFICE OF THE STATE ATTORNEY TO THE VICTIM, MCFARLAND, DUE TO THE VICTIM'S RELIANCE TO HER DETRIMENT UPON THE VOLUNTARY ASSURANCES OF THE OFFICE OF THE STATE ATTORNEY THAT IT WOULD ACT ON HER BEHALF TO OBTAIN A RESTRAINING ORDER FOR THE PURPOSE OF PROTECTING HER FROM FURTHER HARASSMENT OR VIOLENCE BY JAMES WILSON?
IF SO, ARE THE ACTIONS AND OMISSION OF THE OFFICE OF THE STATE ATTORNEY IN CARRYING OUT ITS UNDERTAKING TO SECURE A RESTRAINING ORDER DISCRETIONARY ACTIVITIES FOR WHICH THE OFFICE OF THE STATE ATTORNEY IS IMMUNE FROM LIABILITY?
Parrotino v. City of Jacksonville, 612 So.2d 586, 592 (Fla. 1st DCA 1992). We merge and rephrase the questions as follows:
IS A STATE ATTORNEY IMMUNE FROM LIABILITY FOR FAILING TO SEEK AN INJUNCTION FOR PROTECTION ON BEHALF OF A WOMAN SUFFERING VIOLENT ATTACKS BY HER BOYFRIEND?
We have jurisdiction.[1] Art. V, § 3(b)(4), Fla. Const.
Tina Parrotino is personal representative of the estate of Diana L. McFarland, who was shot and killed by her abusive boyfriend. Prior to her death, McFarland had repeatedly gone to the Jacksonville Police for help in dealing with her boyfriend's threats and abuse.
On one occasion, the police advised her to go to the State Attorney to seek a restraining order and further help. Someone in the State Attorney's office allegedly assured McFarland that actions would be taken to help her, including seeking a restraining order (called an "injunction for protection"). However, the State Attorney's office misplaced or misfiled the pertinent documents, and as a result no further action was taken on McFarland's behalf. She continued to suffer abusive conduct from the boyfriend and sought further help from police, but eventually was murdered by the boyfriend.
McFarland's estate sued both the City of Jacksonville and the State Attorney. The trial court dismissed all counts for failure to state a cause of action. On appeal, the First District upheld the dismissal as to the City but held that the complaint stated a cause of action against the State Attorney.
American law has long recognized that prosecutorial immunity from suit rests on the same footing as the immunity conferred upon judges and grand juries. Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This particular type of immunity embraces persons who exercise a judicial or quasi-judicial function; and the immunity rests on the sound public policy that a strict guarantee of immunity is necessary to preserve the effectiveness and impartiality of judicial and quasi-judicial offices. Both judges and prosecutors alike should be free from the threat of suit for their official actions, because permitting suit in this situation *1099 could deter a full and unfettered exercise of judicial or quasi-judicial authority.
In that sense, prosecutorial immunity traces its lineage to the earliest days of the common law. While the English courts long ago held that a judge acting wholly without jurisdiction is subject to suit for any injury so caused, In re the Marshalsea, 77 Eng. Rep. 1027 (K.B. 1613), an absolute immunity was conferred upon judges acting within their lawful powers, even where the actions allegedly involved serious misconduct. Floyd v. Barker, 77 Eng.Rep. 1305 (K.B. 1608). This earlier precedent was directly imported into the law of the United States as the common-law basis for judicial immunity, Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), and has continued to be cited as persuasive authority into the present era. Imbler, 424 U.S. at 423 n. 20, 96 S.Ct. at 99 n. 20.
It may be true that in its earliest manifestation judicial immunity emanated from the English sovereign's absolute immunity, because early English judges sat at the pleasure and as legal appendages of the Crown. However, in time even England began recognizing that judges held an office that was to an increasing degree distinct from and beyond the Crown's reach. Floyd. Continuing this same trend, judicial immunity and sovereign immunity completely ceased to be coextensive as conceived in most American states, and in Florida in particular. Article V of the Florida Constitution creates the judicial branch of this state, deliberately separating it from and making it coequal to the other branches of government. Article V also creates the office of State Attorney, implying what is obvious  the State Attorneys are quasi-judicial officers.[2]
While the legislature has authority to waive immunity for those organs of government within its purview, the legislature cannot take actions that would undermine the independence of Florida's judicial and quasi-judicial offices. This would violate the doctrine of separation of powers. Art. II, § 3, Fla. Const. For example, subjecting the judiciary and the state's quasi-judicial officers to punitive lawsuits for official actions obviously would fall into the latter category, because it would impinge upon the independence of these offices. In any event, we do not believe this is what the legislature intended to do when it waived sovereign immunity. To summarize, judicial and prosecutorial immunity in Florida long have existed apart from sovereign immunity, have an independent basis in law and policy, and have not been waived. The immunity clearly applies in this case.
We are very mindful of the facts at hand. This Court consistently has supported efforts to assist women being subjected to abuse, and we have commissioned and acted upon a study of gender-related bias in the state's judicial system. Report of the Florida Supreme Court Gender Bias Study Commission, 42 Fla.L.Rev. 803 (1990). Partly as a result of our Gender Bias Report, Florida law now has been modified so that women suffering abuse can obtain an injunction for protection directly from the clerk of the court, without any need of the state attorney's help. § 741.30, Fla. Stat. (1991).
Moreover, The Florida Bar has developed and this Court has approved simplified forms to obtain the injunction. Supreme Court Approved Simplified Forms, § 3. These forms are readily available throughout Florida, at the office of every clerk of the court, at The Florida Bar's offices, and in many libraries. And the Florida Legislature also has directed that each clerk of the court shall assist women in filling out the simplified forms and shall waive fees, whenever necessary. § 741.30, Fla. Stat. (1991). The result of these reforms is that the injunction now can be obtained directly, quickly, without an attorney's help, and at little monetary cost. The bureaucratic *1100 problems encountered by McFarland now have been eliminated by these reforms.
We are sympathetic to the circumstances that led to a death in this case. However, we cannot allow sympathy in one instance to establish precedent that would overturn a well founded and long-standing immunity accorded to state attorneys. Overturning the earlier precedent necessarily would allow state attorneys to be sued in many other disparate contexts, resulting in serious disruption of the office. Such a slippery slope must be avoided both as a matter of law and for reasons of sound public policy.
The decision below is quashed. We remand this cause with directions that the trial court's dismissal shall be affirmed.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
NOTES
[1] Petitioner also has argued an alternative basis of jurisdiction, that the decision below affects a class of constitutional officers. We agree that jurisdiction would exist on that basis, art. V, § 3(b)(3), Fla. Const., because the opinion below has an obvious effect on a class of state officers (the state attorneys and assistant state attorneys) whose offices are named and authorized by the Florida Constitution. See art. V, § 17, Fla. Const.
[2] In so saying, we do not revisit or modify our decision in State v. Bloom, 497 So.2d 2 (Fla. 1986), holding that the decision to prosecute is an "executive" function. A state attorney, while being a quasi-judicial officer, also shares some attributes of the executive. A judicial attempt to interfere with the decision whether and how to prosecute violates the executive component of the state attorney's office. Immunity from suit, on the other hand, arises from the quasi-judicial nature of the office.