725 So.2d 1245 (1999)
Robert R. ROWE, Appellant,
v.
Alan H. SCHREIBER, Public Defender of the 17th Judicial Circuit of Florida, and Richard L. Jorandby, Public Defender of the 15th Judicial Circuit of Florida, Appellees.
No. 97-1997
District Court of Appeal of Florida, Fourth District.
January 27, 1999.
*1246 Diane H. Tutt of Diane H. Tutt, P.A., Plantation, for appellant.
Lillian Conrad of Law Offices of Lillian Conrad, Plantation, Dunn & Johnson, P.A., Miami, and Neil Rose of Bernstein & Chackman, P.A., Hollywood, for appellees.

ON MOTION FOR REHEARING
GROSS, J.
We grant appellant's motion for rehearing in part, withdraw our previous opinion, and substitute the following.
Robert Rowe appeals an order dismissing his fifth amended complaint with prejudice.
On December 14, 1984, Rowe was convicted of several counts of capital sexual battery and was sentenced to four terms of life imprisonment. This court affirmed the conviction on April 11, 1988. See Rowe v. State, 523 So.2d 590 (Fla. 4th DCA 1988). Rowe timely moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850, which the trial court denied without an evidentiary hearing. On November 20, 1991, this court reversed and remanded the case for an evidentiary hearing "to determine the merits of the defendant's position." See Rowe v. State, 588 So.2d 344 (Fla. 4th DCA 1991).
The grounds asserted in the motion for post-conviction relief were that numerous errors committed at trial by Rowe's assistant public defender amounted to a violation of the constitutional right to effective assistance of counsel. On July 15, 1994, after an evidentiary hearing, the trial court granted *1247 Rowe's motion for post-conviction relief and ordered a new trial based on the ineffective assistance of Rowe's trial counsel. The state nolle prossed the charges against Rowe on May 15, 1995.
On November 23, 1994, Rowe filed a legal malpractice suit against attorney Bradley Stark, who had represented him on the post-conviction relief matter from January 11, 1989 through March 10, 1993. In his third amended complaint, filed on December 26, 1995, Rowe added Alan Schreiber as a party. Schreiber is the Public Defender for the Seventeenth Judicial Circuit, whose office represented Rowe at his trial in 1984. Rowe alleged that Schreiber negligently managed the office and negligently supervised the assistant public defender who had malpracticed at the original trial.
In his fourth amended complaint, filed on March 13, 1996, Rowe added Richard Jorandby as a party. Jorandby is the Public Defender for the Fifteenth Judicial Circuit, whose office handled the direct appeal from the 1984 conviction. Rowe alleged that his direct appeal was negligently handled based on the failure to raise the issue of ineffective assistance of trial counsel, despite the fact that "instances of [trial counsel's] ineffective assistance were clear on the record." See Appellant's Initial Brief, at 3. Rowe maintained that "had the issue been raised in the initial appeal, an evidentiary hearing or new trial would have been mandated by the appellate court and that as a result of Jorandby's negligence, [Rowe's] release from prison and ultimate invalidation of his convictions and sentences were delayed."[1]Id. at 3-4.
Schreiber and Jorandby filed identical motions to dismiss on the ground that the actions were barred by the two year statute of limitations contained in section 95.11(4), Florida Statutes (1997). The trial court granted the motions.
We hold that the limitations period under section 95.11(4)(a), began to run when the trial court granted Rowe's motion for post-conviction relief based on ineffective assistance of counsel. Using this date, the actions against both Schreiber and Jorandby were timely.
Generally, a statute of limitations begins to run from the time a cause of action accrues. See § 95.031, Fla. Stat. (1997). A "cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (1997). For professional malpractice actions, the statute of limitations is two years, with the period of limitations running "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." § 95.11(4)(a), Fla. Stat. (1997). Construing this section for professional transactional malpractice, the supreme court has written that "[g]enerally, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla.1990) (citations omitted). Cases cited with approval in Peat, Marwick have interpreted section 95.11(4)(a) to mean that
the event which triggers the running of the statute of limitations is notice to or knowledge by the injured party that a cause of action has accrued in his favor, and not the date on which the negligent act which caused the damages was actually committed.
Edwards v. Ford, 279 So.2d 851, 853 (Fla. 1973) (quoting Downing v. Vaine, 228 So.2d 622, 625 (Fla. 1st DCA 1969)); Birnholz v. Blake, 399 So.2d 375 (Fla. 3d DCA 1981). With regard to litigation-related legal malpractice, the supreme court recently held that the two year statute of limitations begins to run when the final judgment becomes final. See Silvestrone v. Edell, 721 So.2d 1173, 23 Fla. L. Weekly S625 (Fla. 1998).
Rowe argues that the "redressable harm" or accrual of the cause of action in this case *1248 arose when he was accorded post-conviction relief on July 15, 1994. Under this view, post-conviction relief under Rule 3.850 becomes an additional element in a cause of action for legal malpractice against a criminal defense attorney, such that a cause of action cannot accrue for statute of limitations purposes until a criminal defendant obtains post-conviction relief. See Shaw v. State, Dep't of Admin., 816 P.2d 1358 (Alaska 1991).
In support of his argument, Rowe cites to Steele v. Kehoe, 23 Fla. L. Weekly D771, 724 So.2d 1192 (Fla. 5th DCA 1998), rev. granted, 722 So.2d 194 (Fla. 1998), a case where a convicted criminal defendant sued his lawyer for malpractice for failing to timely file a Rule 3.850 motion on his behalf. The trial court dismissed the complaint, ruling that the 3.850 motion was "jurisdictionally barred," since the defendant was unable to prove that he was improperly convicted, because he had not had the underlying conviction set aside, which, of course, he could not do as a result of the untimely filing of the post-conviction relief motion. Id. at D772, 724 So.2d at 1194-95. The fifth district affirmed the dismissal, while sympathizing with the Catch-22 in which the defendant was entangled. Id.
Steele was primarily concerned with the narrow issue of the remedy that should be available to a defendant whose attorney neglects to file a Rule 3.850 motion within the two year time limitation of the rule. See Fla.R.Crim.P. 3.850(b). Steele was not a case where the purported malpractice involved the ineffective assistance of counsel at a criminal trial. In affirming the dismissal, the fifth district adopted the broad rule applicable to all legal malpractice in the context of a criminal casethat "exoneration is a prerequisite to a legal malpractice action arising from a criminal prosecution." Id. at D772, 724 So.2d at 1193. As "logical support" for this holding, the fifth district set forth three policy reasons:
First, criminal procedure provides a remedy for ineffective assistance of counsel. Judicial economy will be best served if we permit the criminal court to determine the issue of ineffective assistance of counsel. If the court should determine that the attorney's representation, even if sub-par, did not affect the result of the criminal trial then a subsequent malpractice action should not lie. Second, public policy should recognize that unless a defendant is exonerated, the proximate cause of the defendant's conviction is his or her commission of a crime and not legal malpractice. Third, and most important, unless exoneration is accomplished, a legal malpractice action would be an inadequate remedy.
Id.
Judge Griffin's dissent in Steele noted that Steele was difficult to reconcile with the first district's decision in Martin v. Pafford, 583 So.2d 736 (Fla. 1st DCA 1991). In that case, Martin was convicted of first degree murder in 1981. The conviction was affirmed on direct appeal in 1982. On November 23, 1984, a lawyer wrote Martin that the attorney who had represented her at trial was incompetent. In 1985, Martin filed a motion for post-conviction relief alleging that her trial counsel had provided ineffective assistance of counsel. The trial court denied the motion, but the first district reversed and granted Martin a new trial based upon the ineffective assistance of the trial attorney. The first district's decision was rendered in December, 1986 and rehearing was denied in February, 1987.
Martin filed a legal malpractice suit against her trial attorney in June, 1987. The trial court dismissed the case, ruling that the suit was barred by the two year statute of limitations in section 95.11(4)(a). On appeal, Martin argued that her cause of action for legal malpractice accrued at the time the first district provided her with post-conviction relief, which she characterized as part of the "appellate review of the underlying legal proceeding." Id. at 738. The first district rejected her argument, ruling that the malpractice cause of action accrued on November 23, 1984, when the lawyer had written her about her trial lawyer's incompetence. In reaching this result, the first district wrote:
Martin's claim of malpractice was not dependent upon appellate reversal of her conviction. Martin was not required to have succeeded in obtaining collateral relief *1249 from her criminal conviction before she could civilly sue her attorney for malpractice. If she had not even filed a postconviction proceeding, she would still have been entitled to bring her civil suit for malpractice.

Id. at 738 (emphasis supplied). The Martin court reached the conclusion italicized above without any discussion or citation to authority.
Steele and Martin represent the two divergent views in cases from other jurisdictions. The views appear to be driven, at least in part, by judicial discomfort with legal malpractice cases arising from criminal proceedings. As Judge Griffin observed in her dissent in Steele:
many of the cases where courts have not found exoneration to be a required element of a malpractice action are cases where the criminal defendant failed to press his claim within the specified period of limitation after the commission of malpractice.... Conversely, in cases where the claim has been filed timely, courts often conclude that no claim can exist until the defendant has been exonerated.
Id. at D775, 724 So.2d at 1199.
We believe that the correct rule under section 95.11(4)(a), is that a defendant must successfully obtain post-conviction relief for the cause of action to accrue in a case involving the legal malpractice of a criminal defense attorney. Such a requirement screens the case through time sensitive and established pathways of the rules of criminal procedure; the complexity of multiple ongoing actions in civil and criminal court is avoided. This requirement better implements the public policy of Florida and creates a bright line rule in the criminal area similar to that established by the supreme court in Silvestrone. Many of the cases from other jurisdictions reaching a different result are distinguishable, because of the wording of their statute of limitations or the differences in their rules of criminal procedure.
Under Florida law, actual or constructive knowledge of the accrual of a cause of action or redressable harm is the trigger for the commencement of the statute of limitations for legal malpractice. See Peat, Marwick, 565 So.2d at 1325; Edwards, 279 So.2d at 853. The elements of an action for legal malpractice are (1) the employment of the attorney; (2) the attorney's neglect of a reasonable duty; and (3) that the attorney's negligence was the proximate cause of loss to the client. See, e.g., Lenahan v. Russell L. Forkey, P.A., 702 So.2d 610, 611 (Fla. 4th DCA 1997).
Success in a post-conviction relief motion pertains to the "proximate cause of loss" element of the tort. Shaw, 816 P.2d at 1361. In this context, causation of "loss" involves something more than the fact that a malpractice plaintiff "has been convicted when he or she should not have been." Stevens v. Bispham, 316 Or. 221, 851 P.2d 556, 560 (1993). Rather, in the legal sense, the determination of a "loss" involves a policy decision as to what "collection of facts ... the law is prepared to recognize as constituting" that element of a claim for legal malpractice. Id.
As the New York Court of Appeals has observed, criminal prosecutions are unique legal proceedings:
This is so because criminal prosecutions involve constitutional and procedural safeguards designed to maintain the integrity of the judicial system and to protect criminal defendants from overreaching governmental actions. These aspects of criminal proceedings make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules.
Carmel v. Lunney, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 (1987).
It is the public policy of Florida to treat a conviction of any criminal offense as a final determination of guilt, unless and until the conviction has been reversed, whether on appeal or through post-conviction relief. See §§ 924.051, 924.055, 924.06(3), Fla. Stat. (1997). The requirement of a successful challenge to a conviction on direct appeal or through post-conviction relief implements the legislative policy of finality and coordinates with the remedies provided by the rules of criminal procedure. We agree with the policy reasons articulated in Steele in support of this requirement.
*1250 Significantly, the Florida Supreme Court has recognized that the standards for "`ineffective assistance of counsel in criminal proceedings and for legal malpractice in civil proceedings are equivalent for the purposes of application of the doctrine of collateral estoppel.'" Zeidwig v. Ward, 548 So.2d 209, 214 (Fla.1989) (quoting Knoblauch v. Kenyon, 163 Mich.App. 712, 415 N.W.2d 286, 289 (1987)); see also McCord v. Bailey, 636 F.2d 606 (D.C.Cir.1980). Thus, a judicial determination in a Rule 3.850 proceeding that a defendant has received the effective assistance of counsel is binding on that defendant who brings a civil malpractice action against his criminal defense lawyer. In support of its holding, the supreme court focused on the anomaly of allowing a defendant
who ha[d] failed in attacking his conviction on grounds of ineffective assistance of counsel ... to collect from his counsel damages in a civil suit for ineffective representation because he was improperly imprisoned.
Zeidwig, 548 So.2d at 214. Zeidwig also referenced a public policy rationale behind its holding___ that it would "undermine the effective administration of the judicial system to ignore completely a prior decision of a court ... on the same issue which" a plaintiff seeks to relitigate in a subsequent civil action. Id. (citation omitted).
Where the standard for ineffective assistance is identical to that of legal malpractice, it is not appropriate to treat victims of the alleged negligence as having suffered a loss caused by their attorney, unless they have demonstrated that their counsel failed to meet the established constitutional standards in a way that would justify post-conviction relief. See Stevens, 851 P.2d at 562. The policy identified in Zeidwig is equally applicable to this case; it is "illogical" and "unreasonable" to allow a convicted or imprisoned defendant to collect damages from his attorney, while the defendant remains under the disability of the conviction or imprisonment caused by the supposed malpractice. The finality of the criminal conviction would be undermined where a conviction remained valid for all purposes, but a defendant would nonetheless be able to pursue compensation through the civil courts.
For these reasons, we agree with those courts that have required criminal defendants to obtain post-conviction relief or to set aside their convictions on appeal before pursuing an action for legal malpractice against their defense attorneys. See Shaw, 816 P.2d at 1360; Morgano v. Smith, 110 Nev. 1025, 879 P.2d 735, 737 (1994); Carmel, 518 N.Y.S.2d 605, 511 N.E.2d at 1128; Stevens, 851 P.2d at 566; Peeler v. Hughes & Luce, 909 S.W.2d 494, 497-98 (Tex.1995).
Since success in a post-conviction relief proceeding is a necessary precondition to the legal malpractice action, the cause of action in this case cannot have accrued until Rowe obtained post-conviction relief. This application of the statute of limitations does not do violence to the rationale behind the statute, which is that to allow stale, antiquated claims would place a defendant at a "grave disadvantage" as a result of "tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses." See Nardone v. Reynolds, 333 So.2d 25, 36 (Fla. 1976) (quoting Riddlesbarger v. Hartford Ins. Co., 74 U.S. (7 Wall.) 386, 19 L.Ed. 257 (1868)); Frew v. Poole and Kent Co., 654 So.2d 272, 276 (Fla. 4th DCA 1995). Florida Rule of Criminal Procedure 3.850(b) requires in most cases that a motion for post-conviction relief be filed no more than "2 years after the judgment and sentence become[s] final in a noncapital case...." Thus, the issues surrounding a lawyer's performance will have to be litigated in a post-conviction relief proceeding within a reasonable time after the conviction.
Schreiber and Jorandby rely on cases from other jurisdictions holding that successful post-conviction relief motions are not the trigger for the running of the statute of limitations. Those cases typically concern statutes that commence the limitations period at an earlier time than Florida's statute. For example, in Michigan, a cause of action accrues under the statute of limitations without regard to whether a client's malpractice claim is ripe; the statute runs from the last day of professional service or six months after the plaintiff discovers that "he has a *1251 `possible' cause of action." See Gebhardt v. O'Rourke, 444 Mich. 535, 510 N.W.2d 900, 903-904 (1994). In Nebraska, the statute "begins to run upon the occurrence of the alleged act of negligence[,]" tempered by a discovery rule which the Nebraska Supreme Court has construed to apply to the negligent acts, and not to the entire cause of action. See Seevers v. Potter, 248 Neb. 621, 537 N.W.2d 505, 509 (1995); Duncan v. Campbell, 123 N.M. 181, 936 P.2d 863, 868 (Ct. App.), cert. denied, 123 N.M. 168, 936 P.2d 337 (1997) (expressing concern that policies of the statute of limitations will be undercut in state where there was no time limit on post-conviction relief remedy).
Gebhardt's concern that the requirement that a defendant first obtain post-conviction relief would "subvert" the statute of limitations is inapplicable to the situation in Florida, where the crucial event in determining the commencement of the limitations period in Chapter 95 is not the time of the negligence or the termination of the attorney-client relationship, but the accrual of the cause of action or occurrence of redressable harm.
Gebhardt, Seevers, and Duncan all require a two tier system, where a malpractice plaintiff must pursue a civil suit and post-conviction relief simultaneously. See Gebhardt, 510 N.W.2d at 907. We do not believe that such a two tier approach adequately conserves court resources. Unlike Gebhardt and Duncan, the Florida Supreme Court in Zeidwig applied the doctrine of collateral estoppel to this area, so that the post-conviction relief proceeding effectively eliminates frivolous malpractice claims. See Shaw, 816 P.2d at 1361.
When a criminal defendant discovers or should have discovered his attorney's malpractice under section 95.11(4)(a) is a question of fact. From the record in this case, Rowe did not have notice or knowledge of a redressable harm or the accrual of the malpractice action until July 15, 1994, the date when the trial court granted his motion for post-conviction relief. The December 26, 1995 filing against Schreiber was within two years of July 15, 1994, and was therefore timely under section 95.11(4)(a). The March 13, 1996 lawsuit filed against Jorandby was inside the two year limit and was therefore timely.
The result we reach here conflicts with Martin. The holding of that case would allow the filing of malpractice actions where no motion for post-conviction relief had been filed; a plaintiff would be able to recover damages even where the original conviction remained viable. Contrary to Zeidwig, Martin implies that a defendant could fail to obtain post-conviction relief for ineffective assistance of counsel and nonetheless maintain a suit for legal malpractice. Martin, 583 So.2d at 738. We certify conflict with Martin. See Fla.R.App.P. 9.030(a)(2)(A)(vi).
Since it was addressed in some of the cases cited in the briefs and will arise on remand, we address another issue concerning the elements of a legal malpractice claim against a criminal defense attorney. We agree with the Supreme Judicial Court of Massachusetts that the better rule is to require a plaintiff, as part of the causation element of the cause of action, to prove by the greater weight of the evidence that he was innocent of the crimes charged in the underlying criminal proceeding. See Glenn v. Aiken, 409 Mass. 699, 569 N.E.2d 783, 787-89 (1991). Such a rule comports with public policy concerns identified in various cases, which require that unless a plaintiff can establish his innocence of the underlying criminal charges, the law views the criminal conduct as the legal cause of damages, and not the attorney's malpractice. See, e.g., Peeler, 909 S.W.2d at 497-498; Carmel, 511 N.E.2d at 1128. In Glenn, the Supreme Judicial Court of Massachusetts articulated the policy reasons behind the adoption of this rule in criminal legal malpractice cases:
The underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime. The possibility that a criminal defendant may not be guilty provides a sufficient, general deterrent against negligent conduct of defense counsel, without the need for providing a tort *1252 remedy for guilty former criminal defendants.
* * *
There is a further policy reason for the rule we adopt. Most criminal defendants in this Commonwealth are represented by counsel appointed at public expense or private counsel whose fees are not substantial. The public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent. The rule we favor helps to encourage that kind of legal representation by reducing the risk that malpractice claims will be asserted and, if asserted, will be successful.
Glenn, 569 N.E.2d at 788; see also Orr v. Black & Furci, P.A., 876 F.Supp. 1270, 1275-76 (M.D.Fla.1995); Gomez v. Peters, 221 Ga. App. 57, 470 S.E.2d 692, 695 (1996) (finding that malpractice plaintiff precluded from maintaining action where he has pled guilty); Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108, 113-14 (1993) (deciding that former criminal defendant must prove "that he did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein").
REVERSED AND REMANDED.
STONE, C.J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Because it was not ruled upon by the trial court, we do not reach the issue of whether it was even appropriate for Jorandby to have raised the issue of ineffective assistance of counsel on direct appeal, based on the types of ineffective assistance claims which formed the basis for Rowe's post-conviction relief. See State v. Barber, 301 So.2d 7 (Fla.1974); Dennis v. State, 696 So.2d 1280 (Fla. 4th DCA 1997).