814 So.2d 396 (2002)
Alan H. SCHREIBER, etc., et al., Petitioners,
v.
Robert R. ROWE, Respondent.
No. SC95000.
Supreme Court of Florida.
March 21, 2002.
Neil Rose of Bernstein & Chackman, P.A., Hollywood, FL; and James C. Barry of Adams, Coogler, Watson, Merkel, Barry & Kellner, P.A., West Palm Beach, FL, for Petitioners.
Sharon C. Degnan and Diane H. Tutt of Diane H. Tutt, P.A., Plantation, FL, for Respondent.
Thomas E. Warner, Solicitor General, T. Kent Wetherell, II, Deputy Solicitor General, Office of the Solicitor General, Tallahassee, FL; and Louis F. Hubener, Assistant Attorney General, Tallahassee, FL, on *397 behalf of Robert A. Butterworth, Attorney General, and the State of Florida, Amicus Curiae.
PER CURIAM.
We have for review the opinion in Rowe v. Schreiber, 725 So.2d 1245 (Fla. 4th DCA 1999), which certified conflict with the opinion in Martin v. Pafford, 583 So.2d 736 (Fla. 1st DCA 1991). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons expressed below, we approve the result in Rowe.
The facts of this case, as expressed by the district court, are as follows:
On December 14, 1984, Rowe was convicted of several counts of capital sexual battery and was sentenced to four terms of life imprisonment. This court affirmed the conviction on April 11, 1988. See Rowe v. State, 523 So.2d 590 (Fla. 4th DCA 1988). Rowe timely moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850, which the trial court denied without an evidentiary hearing. On November 20, 1991, this court reversed and remanded the case for an evidentiary hearing "to determine the merits of the defendant's position." See Rowe v. State, 588 So.2d 344 (Fla. 4th DCA 1991).
The grounds asserted in the motion for post-conviction relief were that numerous errors committed at trial by Rowe's assistant public defender amounted to a violation of the constitutional right to effective assistance of counsel. On July 15, 1994, after an evidentiary hearing, the trial court granted Rowe's motion for post-conviction relief and ordered a new trial based on the ineffective assistance of Rowe's trial counsel. The state nolle prossed the charges against Rowe on May 15, 1995.
On November 23, 1994, Rowe filed a legal malpractice suit against attorney Bradley Stark, who had represented him on the post-conviction relief matter from January 11, 1989 through March 10, 1993. In his third amended complaint, filed on December 26, 1995, Rowe added Alan Schreiber as a party. Schreiber is the Public Defender for the Seventeenth Judicial Circuit, whose office represented Rowe at his trial in 1984. Rowe alleged that Schreiber negligently managed the office and negligently supervised the assistant public defender who had malpracticed at the original trial.
In his fourth amended complaint, filed on March 13, 1996, Rowe added Richard Jorandby as a party. Jorandby is the Public Defender for the Fifteenth Judicial Circuit, whose office handled the direct appeal from the 1984 conviction. Rowe alleged that his direct appeal was negligently handled based on the failure to raise the issue of ineffective assistance of trial counsel, despite the fact that "instances of [trial counsel's] ineffective assistance were clear on the record." See Appellant's Initial Brief, at 3. Rowe maintained that "had the issue been raised in the initial appeal, an evidentiary hearing or new trial would have been mandated by the appellate court and that as a result of Jorandby's negligence, [Rowe's] release from prison and ultimate invalidation of his convictions and sentences were delayed." Id. at 3-4.
Schreiber and Jorandby filed identical motions to dismiss on the ground that the actions were barred by the two year statute of limitations contained in section 95.11(4), Florida Statutes (1997). The trial court granted the motions.
Rowe, 725 So.2d at 1246-47 (footnote omitted). On appeal, the district court held that the statute of limitations began to run *398 when the trial court granted Rowe's motion for postconviction relief based on ineffective assistance of counsel. Hence, the district court concluded that the actions against both Schreiber and Jorandby were timely. The district court certified conflict with Martin regarding whether criminal defendants are required to obtain postconviction relief or to set aside their convictions on appeal before pursuing an action for legal malpractice against their defense attorneys. See id. at 1251.
Subsequent to the district court's decision below, this Court decided Steele v. Kehoe, 747 So.2d 931 (Fla.1999), wherein we concluded that a convicted criminal defendant must obtain appellate or postconviction relief as a precondition to maintaining a legal malpractice action. We further held that the statute of limitations in a malpractice action does not commence until the criminal defendant has obtained final appellate or postconviction relief. Accordingly, the conflict in the present case has been resolved by our decision in Steele. We approve the decision below and disapprove Martin.
Given our jurisdiction on the certified conflict, we have jurisdiction over all of the issues presented in this case, and therefore we address two other issues raised by the parties. See Fulton County Administrator v. Sullivan, 753 So.2d 549, 553 n. 3 (Fla.1999) ("Given our jurisdiction on the basis of the certified question, we have jurisdiction over all of the issues raised in this case.").[1] First, the petitioners have asked this Court to extend the doctrine of judicial immunity to public defenders in this state. The petitioners direct our attention to Office of State Attorney v. Parrotino, 628 So.2d 1097 (Fla. 1993), wherein this Court confirmed that state attorneys are entitled to judicial immunity. We noted in Parrotino that prosecutorial immunity "traces its lineage to the earliest days of the common law." Id. at 1099. This Court labeled state attorneys as quasi-judicial officers and, as a result, we determined that subjecting state attorneys to punitive lawsuits for official actions would "impinge upon the independence of these offices." Id.
The petitioners assert that public defenders should also be labeled quasi-judicial officers, as their duties are sufficiently analogous to those of state attorneys. However, in Windsor v. Gibson, 424 So.2d 888 (Fla. 1st DCA 1982), the First District Court of Appeal held that public defenders were not entitled to judicial immunity:
Considerations which require that a judge and prosecutor be immune from liability for the exercise of duties essential to the administration of justice, do not require that the same immunity be extended to the public defender. While the prosecutor is an officer of the state whose duty it is to see that impartial justice is done, the public defender is an advocate, who once appointed owes a duty only to his client, the indigent defendant. His role does not differ from that of privately retained counsel.
Id. at 889; see also Wilcox v. Brummer, 739 So.2d 1282 (Fla. 3d DCA 1999). We agree with this analysis. Certainly public defenders have unique responsibilities that are not shared by other defense attorneys in our criminal system. Nevertheless, on the spectrum of criminal law actors, the role of public defenders is more analogous *399 to the role of private attorneys than to that of state attorneys. Thus, we decline to extend judicial immunity to public defenders in this state. We note, however, that in 1984, in response to Windsor, the Legislature extended the waiver of sovereign immunity to public defenders, thereby exempting public defenders and their employees from personal liability pursuant to section 768.28(9)(a). See ch. 84-29, § 1, Laws of Fla.
Finally, we address respondent's argument regarding whether a criminal defendant should be required to present evidence of actual innocence as an element of the cause of action for legal malpractice arising from the underlying criminal case. The district court stated the following regarding this claim:
Since it was addressed in some of the cases cited in the briefs and will arise on remand, we address another issue concerning the elements of a legal malpractice claim against a criminal defense attorney. We agree with the Supreme Judicial Court of Massachusetts that the better rule is to require a plaintiff, as part of the causation element of the cause of action, to prove by the greater weight of the evidence that he was innocent of the crimes charged in the underlying criminal proceeding. See Glenn v. Aiken, 409 Mass. 699, 569 N.E.2d 783, 787-89 (1991). Such a rule comports with public policy concerns identified in various cases, which require that unless a plaintiff can establish his innocence of the underlying criminal charges, the law views the criminal conduct as the legal cause of damages, and not the attorney's malpractice. See, e.g., Peeler, 909 S.W.2d at 497-498; Carmel, [518 N.Y.S.2d 605,] 511 N.E.2d at 1128. In Glenn, the Supreme Judicial Court of Massachusetts articulated the policy reasons behind the adoption of this rule in criminal legal malpractice cases:
The underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime. The possibility that a criminal defendant may not be guilty provides a sufficient, general deterrent against negligent conduct of defense counsel, without the need for providing a tort remedy for guilty former criminal defendants.
* * *
There is a further policy reason for the rule we adopt. Most criminal defendants in this Commonwealth are represented by counsel appointed at public expense or private counsel whose fees are not substantial. The public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent. The rule we favor helps to encourage that kind of legal representation by reducing the risk that malpractice claims will be asserted and, if asserted, will be successful.

Glenn, 569 N.E.2d at 788; see also Orr v. Black & Furci, P.A., 876 F.Supp. 1270, 1275-76 (M.D.Fla.1995); Gomez v. Peters, 221 Ga.App. 57, 470 S.E.2d 692, 695 (1996) (finding that malpractice plaintiff precluded from maintaining action where he has pled guilty); Bailey v. Tucker, 533 Pa. 237, 621 A.2d 108, 113-14 (1993) (deciding that former criminal defendant must prove "that he did not commit any unlawful acts with which he *400 was charged as well as any lesser offenses included therein").
725 So.2d at 1251-52. We agree with the reasoning of the district court on this issue and adopt the reasoning as our own.
Accordingly, for the reasons stated in this opinion, we approve the result of the district court's decision below.
It is so ordered.
WELLS, C.J., and HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion.
SHAW, J., concurring in part and dissenting in part.
The majority opinion concludes that public defenders are not entitled to quasi-judicial immunity because they are advocates who owe a duty only to their clients, and their role is "more analogous to the role of private attorneys than to that of state attorneys." I dissent from this conclusion because I am convinced that the office of the public defender has evolved to the point that there is no reason in logic not to extend to it the same quasi-judicial immunity enjoyed by the office of the state attorney. Both are integral parts of our criminal justice system with constitutionally mandated duties that subject them to possible civil liability. I fail to see why one should enjoy quasi-judicial immunity and not the other.
The right to counsel is woven into the fabric of our criminal justice system, and in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court of the United States put to rest any doubts relative to the significant nature of this fundamental right:
[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.
Gideon, 372 U.S. at 344, 83 S.Ct. 792.
The Florida Legislature, in 1963, responded to this mandate by enacting section 27.50, Florida Statutes, creating the office of the public defender[2] and in 1972 a *401 constitutional revision elevated the office of the public defender to that of a constitutional officer.[3] Accordingly, both the public defenders and the state attorneys share constitutionally derived powers under article V of the Florida Constitution.
Prosecutorial immunity traces its lineage to the English common law and the idea that judges who serve at the pleasure of the Crown should enjoy sovereign immunity. In Office of the State Attorney v. Parrotino, 628 So.2d 1097 (Fla.1993), this Court had the opportunity to review that long-standing immunity, and we recognized that the office of state attorney is created by article V of the Florida Constitution which creates the Judicial Branch of this State "implying what is obvious ... [that] State Attorneys are quasi-judicial officers." Id. at 1099. I see no reason why the same cannot be said of the public defenders. The fact that public defenders do not enjoy the common law lineage of state prosecutors does not mean that one office is any less critical to our criminal justice system nor does it mean that one office is any less prone to punitive law suits for official actions. Both the state attorney and public defender are article V officers whose principal role is to assure that a criminal case is subjected to meaningful adversarial testing. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).
Moreover, in comparing the statutory duties, the similarities between the two state officers are even more apparent. Both serve on a full-time basis and are prohibited from the private practice of law.[4] Both are statutorily mandated to represent all matters which are provided by law,[5] and absent the immunity afforded to quasi-judicial officers, both are subject to civil liability as a result of their official duties.
It appears to me that the public defender's role is more analogous to the role of a state attorney than to that of a private attorney who is free to pick and choose his or her client and thereby limit legal exposure. Public defenders, on the other hand, are often put in the position of representing indigent clients who do not choose them and who in many instances do not trust them because they are state salaried officials. Private attorneys are not forced into this awkward position, and if they find themselves with a dissatisfied client or a client they no longer feel comfortable representing. *402 they are in most instances free to terminate the relationship.
I do not agree that the role of the public defender is so different from the role of the state attorney that public defenders should not enjoy quasi-judicial immunity to the extent state attorneys enjoy such immunity. I feel that the opposite is true and I can see no good reason why these two article V officers, both sharing roles that subject them to civil liability, should not enjoy similar immunity. Their roles are not so dissimilar as to merit the distinction imposed by the majority opinion.
NOTES
[1] Due to the fact that the district court did not address the issue below, we decline to address petitioner Jorandby's argument concerning whether a criminal defendant must successfully obtain postconviction relief through a petition for writ of habeas corpus on the grounds of ineffective assistance of appellate counsel before filing a malpractice suit against his criminal appellate attorney.
[2] Section 27.50 provided in relevant part:

There shall be a public defender, who shall be a member of the Florida bar in good standing, for each of the judicial circuits. The public defender shall be elected at the general election by the qualified electors of their respective judicial circuits as other state officials are elected and shall serve for a term of four years.
§ 27.50, Fla. Stat. (1963).
[3] The constitutional revision was very similar to section 27.50:

SECTION 18. Public defenders.In each judicial circuit a public defender shall be elected for a term of four years. He shall perform duties prescribed by general law. A public defender shall be an elector of the state and reside in the territorial jurisdiction of the circuit. He shall be and have been a member of the Bar of Florida for the preceding five years. Public defenders shall appoint such assistant public defenders as may be authorized by law.
Art. V, § 18, Fla. Const. (1972).
[4] Compare § 27.015, Fla. Stat. (2000) (providing that state attorneys serve on a full-time basis and are prohibited from the private practice of law) with § 27.51(3), Fla. Stat. (2000) (providing that public defenders serve on a full-time basis and are prohibited from the private practice of law).
[5] Compare § 27.02, Fla. Stat. (2000) (providing for the cases in which state attorneys shall appear) with § 27.51(1), Fla. Stat. (2000) (providing for the cases in which public defenders shall appear).