Dear Senator Campbell:
You ask the following questions:
1. In which branch of state government does the Capital Collateral Regional Counsel function?
2. If the Commission on Capital Cases receives a citizen complaint alleging the misuse or misappropriation of state funds in one of the Capital Collateral Regional Counsel offices, to what entity should the Commission forward the matter for investigation and resolution?
The Commission on Capital Cases (commission) was created to
"[R]eview the administration of justice in capital collateral cases, receive relevant public input, review the operation ofthe capital collateral regional counsel and private counsel appointed pursant to ss. 27.710 and 27.711, and advise and make recommendations to the Governor, Legislature, and Supreme Court."[1] (e.s.)
In addition, the commission receives complaints regarding the practice of any office of regional counsel and appointed counsel and "shall refer any complaint to The Florida Bar, the State Supreme Court, or the Commission on Ethics, as appropriate."[2] You state that the above questions have been posed in order to assist the commission in carrying out its statutory duties.
Question One
Chapter 97-313, Laws of Florida, abolished the Office of Capital Collateral Representative and replaced it with three regional offices of capital collateral counsel (CCRC) located in the northern, middle and southern regions of Florida.[3] Each regional office is administered by a regional counsel who represents persons convicted and sentenced to death "for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person. . . ."[4] The three regional counsels' offices function independently, as separate budget entities, and the regional counsels "shall be the office heads for all purposes."[5]
The CCRC's predecessor, the Office of Capital Collateral Representative, was created within the judicial branch.[6]
The initial bill filed to abolish the Office of Capital Collateral Representative and to create the CCRC placed the CCRC in the judicial branch of government.[7] An amendment to the bill deleted the word "judicial" and replaced it with "executive," thus creating the CCRC within the executive branch.[8] After committee discussions, a compromise was reached and a late-filed amendment was offered on the House floor to delete the reference to the executive branch. The sponsor, Representative Victor Crist, stated that it was "agreed to move the authority of the CCR out of the executive, out of the judiciary, kinda in a third world out there, so it's not really part of any one, so it has very little influence on it."[9]
In further discussion, it was asked whether the amendment was anything different than discussed in committee and Representative Crist stated that it was a compromise to "take [it] out of both, left it out on its own, so it's not under any influence."[10] Thus, the resulting legislation does not refer to any branch of government under which the CCRC functions and the legislative history indicates a concerted effort to remove the agency from the control of any single branch of government.
It is fundamental that the functions of state government are divided among the three branches.[11] The history of the legislative act creating the CCRC indicates an intent to remove the agency from the influence of the judiciary and the executive branch. However, there is no evidence that the Legislature intended to create an entity that was not a state agency and there is no constitutional provision enumerating the powers or directing the placement of the CCRC. While there may be constitutional concerns in the creation of an agency purposefully left out of the three branches of state government, this office must presume the constitutionality of the Legislature's action in creating the CCRC in the manner it did.
Determining in which branch of state government the CCRC functions, absent a legislative designation, is problematic and when presented to a court for consideration would most likely require an assessment of the essential powers and function of the CCRC and a comparison of them to those assigned to the different branches of government.[12] While several cases have addressed the placement of certain entities in a particular branch of government, none has been found that speak to the CCRC.[13]
As noted above, the sole purpose of the CCRC is to institute and prosecute collateral actions challenging the legality of the judgment and sentence imposed against any person convicted and sentenced to death in this state.[14] This purpose appears most analogous to the function of the public defenders of this state.[15]
There is no definitive statement either statutorily or judicially, however, placing the public defender in a particular branch of state government such that by comparison, the placement of the CCRC could be determined. For example, section 768.28(2), Florida Statutes, in defining state agencies or subdivisions for purposes of sovereign immunity, includes the "executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state[.]" By parenthetical inclusion of public defenders in the definition adjacent to the judicial branch, it would appear unclear whether the public defender is commonly thought to be a part of the judiciary. Several Florida courts have noted that public defenders are not part of the judicial branch, with one court stating that they are "independent constitutional officers"[16] and another declining to extend judicial immunity to them.[17] By analogy, it would appear that the CCRC would not be placed in the judicial branch. Moreover, while the Justice Administration Commission is directed to provide administrative support and service to the CCRC at their request, the offices "shall not be subject to control, supervision, or direction by the Justice Administration Commission in any manner[.]"[18]
The legislative branch is declared to be responsible for determining policies and programs and reviewing program performance.[19] There is no evidence that the CCRC has been granted any authority to carry out this legislative function through its activities, nor do the activities of the CCRC appear similar to other entities within the legislative branch.[20]
The declaration of policy for the organizational structure of Florida government provides that "the executive branch has the purpose of executing the programs and policies adopted by the Legislature and of making policy recommendations to the Legislature."[21] Inherent in the nature of this executive power is the ability to take authoritative action to fulfill the charge of faithfully enforcing the laws. As the agency charged with carrying out the legislatively mandated representation of indigents who have been given a death sentence, the CCRC would more closely resemble an agency within the executive branch. However, it is beyond the authority of this office to make such a declaration, given the legislative history indicating an intent that it not be a part of the executive branch of government. It would be advisable, therefore, to seek legislative clarification of this matter.
Question Two
Section 27.709(2)(c), Florida Statutes, states that the Commission on Capital Cases "shall receive complaints regarding the practice of any office of regional counsel and private counsel appointed pursuant to ss. 27.710 and 27.711 and shall refer any complaint to The Florida Bar, the State Supreme Court, or the Commission on Ethics, as appropriate." The statute is otherwise silent as to the commission's responsibility for forwarding complaints it may receive regarding the activities of the regional counsels. Materials provided to this office indicate that the Florida Commission on Human Relations (FCHR) has previously terminated a whistle-blower investigation into alleged adverse personnel actions by a CCRC. According to the materials, the FCHR cited lack of jurisdiction over complaints made against the CCRC and its determination that the CCRC are within the judicial branch and therefore not within the scope of section112.31895(1), Florida Statutes, in terminating its investigation.[22] The Commission on Capital Cases has taken the position that the CCRC does fall within the scope of section 112.31895(1), and that the CCRC is a part of the executive branch.[23] This office will not operate as the arbiter in a disagreement between the Commission on Capital Cases and the Florida Commission on Human Relations.
I would note, however, that section 112.31895(1)(a), Florida Statutes, provides:
"If a disclosure under s. 112.3187 includes or results in alleged retaliation by an employer, the employee or former employee of, or applicant for employment with, a state agency, as defined in s. 216.011, that is so affected may file a complaint alleging a prohibited personnel action, which complaint must be made by filing a written complaint with the Office of the Chief Inspector General in the Executive Office of the Governor or the Florida Commission on Human Relations, no later than 60 days after the prohibited personnel action."
Section 216.011(1)(qq), Florida Statutes, defines "[s]tate agency" or "agency" to include "state attorneys, public defenders, the capital collateral regional counsels, the Justice Administrative Commission, the Florida Housing Finance Corporation, and the Florida Public Service Commission." (e.s.) This should not be interpreted as a finding of improper action by the FCHR, as there are factual and procedural issues that would necessarily impact such a determination that have not been presented to, nor will be considered by, this office under these circumstances.
As to this office directing the commission as to where to relay a complaint against a CCRC for misuse or misappropriation of state funds, the enabling legislation for the commission is clear in specifying the options that are available. It would be within the prerogative of the Legislature, not this office, to expand these options should they prove inadequate. As noted above, a definitive resolution of your questions necessitates legislative clarification.
Sincerely,
Charlie Crist Attorney General
CC/tals
[1] Section 9, Ch. 97-313, Laws of Fla. See s. 27.709(2)(a), Fla. Stat.
[2] Section 27.709(2)(c), Fla. Stat.
[3] Section 1, Ch. 97-313, Laws of Fla.
[4] Section 2, Ch. 97-313, Laws of Fla.
[5] Id.
[6] Section 3, Ch. 85-332, Laws of Fla.
[7] See HB 1091 (537-175A-97), Florida House of Representatives, 1997 Legislative Session, creating the CCRC in the judicial branch.
[8] See Committee on Civil Justice and Claims, Florida House of Representatives, April 8, 1997, Tape 1, adopting an amendment to HB 1091 providing for the creation of the CCRC in the executive branch of government and recasting the bill as a committee substitute (CS/HB 1091). There was lengthy discussion as to the pros and cons of having the CCRC in the executive or the judicial branch, with Rep. Crist advocating that the agency be assigned to the executive branch and Rep. Cosgrove offering an amendment to assign it to the judicial branch.
[9] CS/HB 1091, Florida House of Representative, Floor Debate, Rep. Crist, April 24, 1997, Tape 5 of 6.
[10] Id., Rep. Crist responding to a question posed by Rep. McKenzie.
[11] Section 3, Art. II, State Const., stating: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
[12] See Florida Motor Lines, Inc. v. Railroad Commissioners,100 Fla. 538, 129 So. 876 (1930). Accord In re Advisory Opinionto the Governor, 223 So. 2d 35 (Fla. 1969). The following also appears in Florida Motor Lines v. Railroad Commissioners at
881:
"The powers of the government' that are `divided into three departments' are not defined or enumerated in the Constitution or by statute. They are to be determined as occasion requires by a consideration of the language and intent of the Constitution as well as of the history, the nature and the powers, limitations and purposes of the Republican form of government established and maintained under the Federal and State Constitutions. The essential nature and effect of the governmental function to be performed, rather than the name given to the function or to the officer who performs it, should be considered in determining whether the particular function is a `power of Government' within the meaning of the Constitution; and if it is such a `power,' whether it is legislative, executive, or judicial in its nature, so that it may be exercised by appropriate officers of the proper department. If the duty or function required by law to be performed, is not one of `the powers of government' that is or must be assigned to only one department and that cannot be exercised by those `properly belonging to' another department, `except in cases expressly provided for by the Constitution,' then the legislature may by statute authorize or require the performance of such governmental duty or function by those `properly belonging to' any of the three departments, provided such a performance of such statutory duty or function is not inconsistent with applicable provisions or principles of organic law."
[13] Office of the State Attorney for the Eleventh JudicialCircuit v. Polites, Nottage and Rice. Office of the PublicDefender v. State of Florida, 904 So. 2d 527, 533 (Fla. 3rd DCA 2005); Schreiber v. Rowe, 814 So. 2d 396, 399 (Fla. 2002) andCommission on Ethics, State of Florida v. Sullivan,489 So. 2d 10, 12-13 (Fla. 1986).
[14] See ss. 27.7001 and 27.701, Fla. Stat.
[15] See s. 27.51, Fla. Stat., prescribing the duties of the public defender to include representation of any person determined to be indigent and: under arrest for or charged with a felony; under arrest for or charged with a misdemeanor authorized for prosecution by the state attorney, a violation of ch. 316, Fla. Stat., punishable by imprisonment, criminal contempt, or violation of a special law or county or municipal ordinance ancillary to a state charge, if the public defender has contracted with the county or municipality to provide representation; alleged to be a delinquent child pursuant to a petition filed in circuit court; sought by petition to be involuntarily placed or committed for various statutorily prescribed reasons; convicted and sentenced to death, forpurposes of handling an appeal to the Supreme Court; or appealing a case arising from one of the previously mentioned situations. (e.s.) See also s. 4, Criminal Justice and Corrections, Appropriations 844 and 1050-1067, 2005-70, Laws of Fla., providing appropriations for the Capital Collateral Regional Counsels under the same category as the public defenders.
[16] Office of the State Attorney for the Eleventh JudicialCircuit v. Polites, Nottage and Rice. Office of the PublicDefender v. State of Florida, 904 So. 2d 527, 533 (Fla. 3rd DCA 2005), citing Schreiber v. Rowe, 814 So. 2d 396, 398-399 (Fla. 2002).
[17] Schreiber v. Rowe, 814 So. 2d 396, 399 (Fla. 2002).
[18] Section 27.702(1), Fla. Stat.
[19] Section 20.02(1), Fla. Stat.
[20] See Commission on Ethics, State of Florida v. Sullivan,489 So. 2d 10, 13-14 (Fla. 1986), discussing the powers and duties of legislative entities such as the Auditor General, the Public Service Commission, the Public Counsel and the Joint Administrative Procedures Committee, in determining that the Florida Commission on Ethics is a legislative entity.
[21] Section 20.02(1), Fla. Stat.
[22] See Letter to Mr. Cecil E. Howard, General Counsel, Florida Commission on Human Relations from Mr. Michael Pearce Dodson, General Counsel, Commission on Capital Cases, dated May 10, 2005.
[23] Id.