# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

| | | |
|---|---|---|
| **JOHNIE N. GIBSON**, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal No. |
| | ) | M1999-00390-COA-R3-CV |
| v. | ) | |
| | ) | Knox County Circuit Court |
| **DOUGLAS TRANT** and | ) | Civil Action No. 3-399-93 |
| **JERRY CUNNINGHAM**, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

APPEAL FROM THE KNOX CIRCUIT COURT
AT KNOXVILLE, TENNESSEE

HONORABLE WHEELER A. ROSENBALM, JUDGE

BRUCE E. PASHLEY
436 Cove Drive
Marietta, GA 30067

GERALD CHARLES RUSSELL
338 High Street
Hightower Professional Office
Maryville, Tennessee 37804
        ATTORNEYS FOR PLAINTIFF/APPELLANT


JEFFREY ALLEN WOODS
550 West Main Avenue
Post Office, Box 2467
Knoxville, Tennessee 37901-2467
        ATTORNEY FOR DEFENDANTS/APPELLEES



**AFFIRMED**

INMAN, Sr. J.

Concur:
CRAWFORD, P.J., W.S
LILLARD, J.

# I

This is a legal malpractice action, arising from an underlying criminal conviction. The plaintiff pleaded guilty in the U. S. District Court at Knoxville in 1989 to one count of a 103-count indictment charging a violation of federal drug laws. He alleged: (1) that "Judge James Jarvis gave the plaintiff the minimum of twenty (20) years under the sentencing law prohibiting probation or parole"; (2) that the defendant lawyers represented him and six other indictees, all of whom pleaded guilty; (3) that the indictments charged criminal activity by interactions between the plaintiff and the six other indictees; (4) that in undertaking to represent all the federal court defendants the defendants herein had an obvious conflict of interest; (5) that he was fraudulently induced to plead guilty by the defendants herein who assured him that "if he would plead guilty all he would get would be a sentence of 8 to 10 years"; (6) that if he did not plead guilty, his father would be indicted on drug charges; and (7) that in reliance upon these misrepresentations he pleaded guilty, later learning that the United States never threatened to prosecute his father and unaware that the minimum sentence was 20 years.

He charges the defendants with gross negligence, willful fraud, willful misrepresentation, willful deceit, outrageous conduct, and malpractice, resulting in, as he alleges, financial losses, mental anguish, loss of freedom and enjoyment of life, physical illness, and loss of constitutional rights.

The defendants filed a Rule 12.02(b) motion to dismiss, upon the hearing of which the parties

stipulated:[1]

Stipulation

In the United State District For The Eastern District of Tennessee, the plaintiff entered a plea of guilty to a single count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. After the trial the trial Court's acceptance of the plaintiff's plea and the imposition of sentence, a "Motion under 28 U.S.C. §2555 to Vacate, Set Aside, or correct [a] Sentence by a person in Federal Custody" was filed. The Federal Court placed that file under "SEAL" and it remains sealed to this day.

The § 2255 motion allegedly breach of the plaintiff's Plea Agreement by the United States, that his plea of guilty was involuntary, that the defendants encountered an actual conflict of interest in representing Mr. Gibson but nevertheless contained multiple representation of him and his six (6) codefendants and that the defendants, Cunningham and Trant, were ineffective in representing the defendant in connection with the foregoing. The trial court denied the plaintiff's request for relief and dismissed his action. The case was appealed to the United States Sixth Circuit Court of Appeals which affirmed the trial court. No application for a Writ of Certiorari to the Supreme Court was filed and the time limitation for doing so has long expired.

The trial judge determined "that in light of the Federal Courts' holding that Mr. Gibson's plea of guilty was, in fact, voluntary, and there exists no right or recovery in this action in this Court, mandating dismissal of this case."

**II**

The procedure employed by the parties is somewhat hybrid, but we assume the motion was treated as one for summary judgment since matters outside the pleading were presented to and

---

[1]The post-conviction file was sealed by order of the U. S. District Court and thus was unavailable in the case at Bar, since the prosecution involved testimony by confidential informants. The stipulation resulted.

-3-

considered by the court. Rule 12.02. Tenn. R. Civ. P. It is apparent that the decision was based solely upon the plaintiff's voluntary plea of guilty, which the trial judge found foreclosed any issue of malpractice.

## III

The appellant, to some extent, argues that since a Rule 12 motion requires the court to assume the allegations of the complaint to be true, *Wolcotts Financial Services Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990), the court was clearly in error in sustaining the motion to dismiss; but in the same breath the appellant concedes the aforesaid stipulation which leads us to the conclusion that the trial Judge treated the motion as one for summary judgment.

## IV

The thrust of the appellant's argument assumes that his case was dismissed under Rule 56, which necessarily involved the application of collateral estoppel or *res judicata* contrary to the requirements of the rule. He argues that collateral estoppel applies only in those instances where a dispositive fact has once been determined by a valid judgment and cannot again be litigated by the same parties, citing *Blue Diamond Coal Company v. Holland-America Insurance Company*, 671 S.W.2d 829 (Tenn. 1984) as authority for the well-known principle. His argument continues that since the parties in the federal case were the United States of America and the plaintiff herein, a necessary element - mutuality of parties - was not present and the doctrine is therefore inapplicable.[2]

---

[2]The appellant says that "he stands willing and able to prove that he is not guilty of the crime to which he entered a guilty plea." Whatever the portent of this assertion may be, hortatory or otherwise, the inherent issue is - or was - addressable to the Federal Court. In *Claudio .v Heller*, 463 N.Y. S2d 155 (1983), a confessed murderer claimed that his lawyer erroneously advised him to admit guilt. The Court avoided questions of morality and held that because

We are not content to resolve this case on a ground so metaphysical as to lead us to an anomalous, even absurd, result, that being the spectacle of a state court awarding damages to an incarcerated federal felon whose conviction and sentence withstood an attack on the voluntariness of his guilty plea. Our review is *de novo* on the record. The issue being one of law, no presumption attaches to the action of the trial court. *Warren v. Estate of Kirk*, 954 S.W.2d 722 (Tenn. 1997).

## V

In Tennessee, the elements of a cause of action for legal malpractice are: (1) duty owed by the attorney(s) to plaintiff; (2) breach of that duty; (3) damages, and (4) the breach of the duty must be the proximate cause of the damage. See *Lazy Seven Coal Sales v. Stone & Hines*, 813 S.W.2d 400, 403 (Tenn. 1991). Thus, causation is a necessary element for a legal malpractice claim. We agree with the appellees that, in order to maintain a claim for legal malpractice arising out of a criminal conviction, the plaintiff must first obtain post-conviction relief from the underlying criminal conviction to establish the necessary element of causation.[3]

## VI

The majority of jurisdictions that have addressed the specific issue concluded that the plaintiff in a legal malpractice case must first obtain post-conviction relief from the underlying

---

innocence was central to the issue of proximate cause, innocence had to be alleged before the suit could be maintained. This rationale is difficult since by necessary inference a civil jury might sit in appellate judgment on the action of a criminal court.

[3]The appellant seemingly argues that his 'malpractice' action is disparate, and that the dismissal did not take into consideration his allegations of fraud, deprivation of constitutional rights, etc. We have concluded, however, that the gravamen of the complaint alleges malpractice which encompasses all allegations.

criminal conviction as a prerequisite to bringing the suit.

The Texas Supreme Court in *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Texas 1995), held that the state's public policy dictates that the plaintiff's conduct was the sole reason for her conviction, and that she could not sue her attorney without first obtaining post-conviction relief. The plaintiff entered into a plea agreement admitting her guilt to the offense of aiding and assisting in the filing of a false partnership tax return. She appeared before the federal court, admitted her guilt and testified that "her admission was freely and voluntarily given." She complained that before she pleaded guilty, her attorney failed to tell her that the U. S. Attorney had offered her absolute immunity. The prosecuting attorney confirmed by affidavit that he had made the immunity offer to the plaintiff's defense counsel. The trial court granted summary judgment in favor of the defendant. The Texas Supreme Court reasoned that because the criminal conduct was the only reason for the conviction, the plaintiff could not show that the conduct of her attorney was the proximate cause of her injury.

The Florida Court of Appeals in *Rowe v. Schreiber*, 725 So.2d 1245 (Fla. App. 4 Dist. 1999), held that requiring a plaintiff in a malpractice suit to first obtain post-conviction relief "screens the case through time sensitive and established pathways for the rules of criminal procedure; the complexity of ongoing actions in civil and criminal court is avoided." The court also stated that this approach fits within the framework of the existing elements of an action for legal malpractice. One of those elements is that the attorney's negligence was the proximate cause of loss to the client. Causation of loss, in the context of this kind of action, means something more than the fact that the plaintiff was convicted when he should not have been; the determination of a "loss" involves a policy decision as to what collection of facts the law is prepared to recognize as constituting that element

-6-

of a claim for legal malpractice. Recognizing exoneration as part of that collection of facts is consistent with the state's public policy of treating a conviction as a final determination of guilt unless and until the conviction has been overturned, the court said. The court also pointed out that in Florida the standard for legal malpractice is the same as the standard for ineffective assistance of counsel in criminal proceedings. And, in view of this principle, it is not appropriate to treat victims of the alleged negligence as having suffered a loss caused by their attorney unless they have demonstrated that their counsel failed to meet the established constitutional standards in a way that would justify a post-conviction relief.

Other jurisdictions follow the rule that a civil action for legal malpractice cannot be maintained without proof of proximate causation between the acts of malpractice and the damages alleged. *Weiner v. Mitchell, Silberbeg & Knupp,* 170 Cal. Rptr. 533 (1981); *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498 (Mo. Ct. App. 1985); ["it is against public policy for the suit to continue in that it would indeed shock the public conscience, engender disrespect for the courts and generally discredit the administration of justice"]. In *Shaw v. State, Dept. of Admin. PDA,* 816 P.2d 1358 (Alaska 1991), the Supreme Court of Alaska held that a convicted criminal defendant must obtain post-conviction relief as a precondition to maintaining a legal malpractice claim against his attorney. In *Bailey v. Tucker*, 621 A.2d 108 (Penn. 1993) the Pennsylvania Supreme Court held that a suit for legal malpractice cannot be maintained unless post-conviction relief is first obtained. In *Glenn v. Aiken*, 569 N.E.2d 784 (Mass. 1991), the plaintiff's conviction of arson was reversed because of an error in the charge which the plaintiff's counsel failed to preserve for appellate review. The Commonwealth elected not to retry the plaintiff, who had already served fourteen months in jail after being found guilty. On appeal from the trial court's entry of summary judgment in the subsequent

malpractice action, the Supreme Judicial Court of Massachusetts adopted the majority position and

held that the plaintiff had the burden of proving his innocence in the underlying arson charge,

holding:

> There is a good reason to place a greater burden on a guilty criminal
> defendant maintaining a claim of malpractice of the type involved in
> this case than is placed on a wronged civil defendant. The
> underpinnings of common law tort liability, compensation and
> deterrence, do not support a rule that allows recovery to one who is
> guilty of the underlying criminal charge. A person who is guilty need
> not be compensated for what happened to him as a result of his
> former attorney's negligence. There is no reason to compensate such
> a person, rewarding him indirectly for his crime. The possibility that
> a criminal defendant may not be guilty provides a sufficient, general
> deterrent against negligent conduct of defense counsel, without the
> need for providing tort remedy for guilty former criminal Defendants.
> Thus, in order to justify a right to recover, a Plaintiff asserting an
> error of the type Glenn assets in this case must prove by a
> preponderance of the evidence, not only that the negligence of the
> attorney defendant caused him harm, but also that he is innocent of
> the crime charged.

Nevada has adopted the majority rule. *Morgano v. Smith*, 879 P.2d 745 (Nev. 1994). In

*Morgano*, the plaintiff had hired an attorney to represent him in a case in which he pleaded guilty

to attempting to obtain money by false pretenses. He subsequently sued his attorney for malpractice.

The Supreme Court of Nevada held that the Plaintiff must show that his *conviction* was caused by

something other than the plaintiff's own conduct. This would require that the plaintiff prove "actual

innocence of the underlying charge" in order to prevail at trial, holding:

> We have not previously enunciated the standard governing legal
> malpractice actions filed by criminal Defendants against privately
> hired defense attorneys. We now hold that, to state a claim for legal
> malpractice against private criminal defense counsel, the Plaintiff
> must assert a basis for claiming that the Plaintiff's conviction or
> sentence was caused by something other than the Plaintiff's own
> conduct. *See generally,* Gregory G. Sarno, Annotation, Legal

> Malpractice in Defense of Criminal Prosecution, 4 A.L.R.5th 273-402 (1992). Specifically, the Plaintiff must plead that he or she has obtained appellate or post-conviction relief in order to overcome a motion for summary judgment or a motion to dismiss.

The Oregon Supreme Court has held that there are three reasons for the rule that a plaintiff must obtain post-conviction relief before maintaining a legal malpractice claim. *Stephens v. Bisham*, 851 P.2d 556 (Ore. 1993). First, the Court states that the Constitutional standards which have been set by the Supreme Courts of Oregon and of the United States in the area of criminal law are of great importance. It would be "inappropriate to treat victims of alleged negligence by defense counsel as having been 'harmed'" unless they show that their attorney's negligence precluded them from obtaining post-conviction relief. Second, the Court points to the difficulty of obtaining a criminal conviction. It would be imprudent to allow a party who has been adjudged guilty by law to recover for malpractice without first having his or her conviction overturned. Third, whether a person has been found guilty through plea bargain, a plea to the charge, or through a trial, the person is "equally guilty." A person who has exchanged a guilty plea for a "better deal" has nonetheless admitted guilt, and should therefore prove his or her innocence through post-conviction relief.

In *Hockett v. Breunig*, 526 N.E.2d 995 (Ind. App. 1988), the plaintiff, who had pleaded guilty to a criminal offense, sued his defense attorney for malpractice alleging the attorney misrepresented the results of blood tests which purportedly connected the criminal defendant to the crime. Affirming summary judgment for the attorney, the Indiana Court of Appeals stated:

> Hockett admitted at the guilty plea hearing that all facts contained in the information were true. Hockett acknowledged on the record that his plea was knowingly, intelligently, and voluntarily entered. (Citations omitted). He is therefore precluded from asserting a contrary position in this malpractice case. Hockett could not demonstrate that negligence on the part of his attorney was the

proximate cause of his incarceration and alleged damages.

The Kentucky Court of Appeals adopted the majority decision in 1997 in *Ray v. Stone*, 952 S.W.2d 220 (Kent. Ct. App. 1997). In *Ray*, the plaintiff pled guilty to cocaine trafficking in the underlying criminal case and was sentenced to nine years in jail. In the civil suit, the plaintiff did not aver that he was innocent of the criminal charges. He alleged that defense counsel failed to: (1) present exculpatory evidence in his behalf; (2) adequately prepare for his defense; (3) call witnesses on his behalf; and (4) represent him to the best of his ability. The record in the criminal case indicated that the plaintiff signed an acknowledgment of his guilt in open court. The Court of Appeals held that "public policy prohibits financial gain resulting, directly or indirectly, from criminal acts." The court also cited the rationale of the Texas Supreme Court in *Peeler*, stating that the plaintiff must establish his innocence by post-conviction relief before showing that the attorney's alleged misrepresentation was the proximate cause of the conviction.

In *Gomez v. Peters*, 470 S.E.2d 692 (Ga. App. 1996), the Georgia Court of Appeals found that in order to establish legal malpractice, a plaintiff must show that he would have prevailed in the underlying litigation if the defendant had not been negligent and where the underlying action is a criminal trial, the plaintiff is precluded from doing this if he had pleaded guilty.

Two states, Ohio and Michigan, have taken a somewhat different view of the precise issue. In *Krahn v. Kinney*, 538 N.E.2d 1058 (Ohio 1989), the Supreme Court of Ohio held that it would be unfair to require a plaintiff in a legal malpractice case to obtain post-conviction relief as a precondition to filing suit. The plaintiff was convicted in the underlying criminal case of three misdemeanor gambling offenses. Two other individuals were implicated in the matter, and during pretrial negotiations between Krahn's attorney and the prosecutor, the prosecutor offered to drop all

charges against Krahn in exchange for her willingness to testify against one of the others. Krahn's attorney did not communicate that offer to her. On the day of the trial, Krahn's attorney recommended that she withdraw her plea of not guilty and enter a guilty plea on a "minor misdemeanor." Krahn later found that she had not pleaded guilty to a minor misdemeanor, but rather to a first-degree misdemeanor.

The Ohio Court held that a plaintiff in a legal malpractice case is not relieved from showing that the injury was caused by the defendant's negligence, but indicated that "[t}he analysis should focus on the facts of the particular case." Moreover, the Court recognized that collateral estoppel can preclude a civil action where the same issue was raised in a prior criminal action alleging ineffective assistance of counsel. However, applying the case-by-case analysis, the Court concluded that the facts presented in *Krahn* prevented the invocation of collateral estoppel as a bar to a civil cause of action.

In *Gebhardt v. O'Rourke*, 510 N.W.2d 900 (Mich. 1994), the plaintiff was convicted of aiding and abetting her then-fiancé in the alleged rape of his ten-year-old daughter. The trial judge set aside the jury's conviction of the plaintiff, holding that there was insufficient evidence that she aided or abetted in the crime. Later, the plaintiff filed an action against her defense counsel for legal malpractice. The trial court concluded that the malpractice suit was barred by the statute of limitations and granted the defendant attorney's motion for summary judgment. The Supreme Court of Michigan addressed the issue of whether final post-conviction relief was necessary only in the context of applying the statute of limitations. Significantly, it was *the plaintiff*, who, in an effort to toll the running of the statute of limitations, asserted that final post-conviction relief was a necessary requirement for a legal malpractice claim arising out of a criminal conviction. According to the

theory urged by the *Gebhardt* plaintiff, her statute of limitations would not begin to run until a final decision had been rendered in the post-conviction proceeding. Under the circumstances of that case, the Michigan Supreme Court concluded that successful post-conviction relief was not a pre-requisite to the maintenance of a claim for legal malpractice arising out of negligent misrepresentation in the criminal matter and that the applicable statute of limitations had expired. The Court recognized that issue preclusion and collateral estoppel should be utilized in the appropriate case, but expressly declined to address the questions of when issue preclusion and collateral estoppel may be appropriately applied.

## VII

As we have said, the anomaly of allowing this suit to go forward is obvious. The voluntary plea of guilty to a criminal charge was the proximate cause of any injury or loss suffered as a result of the conviction, and the appellant must obtain post-conviction relief as a condition precedent to the maintenance of this action. The majority rule is clear: a guilty person is not entitled to civil damages for being found guilty notwithstanding his/her lawyers' negligence. We agree with the argument of the appellees that the allowance of this action would shock the public conscience, engender disrespect for the judicial system and generally discredit the concept of justice.

The judgment is affirmed at the cost of the appellant.

_____
INMAN, Sr. J.

-12-

CONCUR:

_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.